*In re* MENEFEE, *State Treasurer, et al.*

No. 399.    Opinion Filed October 24, 1908.

(97 Pac. 1014.)

1.    STATE FINANCE—Issue of Bonds—Limitations. Section 23, art. 10 (Bunn's Ed. sec. 289), of the Constitution, construed to mean in addition to the debts and liabilities of the territory of Oklahoma, or such debts and liabilities as are expressly assumed by the terms of the Constitution to meet casual deficits or failures in revenues, or expenses not provided for, that debts may be contracted by the state; but such debts, direct and contingent, singly or in the aggregate, shall not at any time exceed four hundred thousand dollars, it being also mandatory that the moneys arising from the sale of the refunding bonds shall be applied to repay such debts or liabilities, and to no other purpose whatever.

2.    SAME—Refunding Bonds—Sanction by People. Bonds which are issued to fund a valid indebtedness neither create any debt nor

increase the debt of the state, but merely change the form of an existing indebtedness, and the act of the Legislature providing for the issuance of such bonds may take effect without having been submitted at a general election to the people for their sanction.

3.    **STATUTES—Declaration of Emergency—Conclusiveness.** The declaring of an emergency by the Legislature by expressing in the act that such measure is immediately necessary for the preservation of the public peace, health and safety, when the same is not of the class specifically excepted from its application, is conclusive on the courts.

4.    **STATE FINANCE—Bonds—Certificates of Officers.** The certificates of the Auditor and the Attorney General of the state, as provided for in section 29, art. 10 (Bunn's Ed. sec. 295), of the Constitution, need not be jointly executed, but are equally valid when separately signed by such officers.

5.    **STATUTES—Title of Act.** An act entitled "An act providing for funding the outstanding warrants and other indebtedness of the state of Oklahoma, and the issuing of bonds therefor; providing for the payment of the same, and making an appropriation, and declaring an emergency," is not invalid as being in conflict with section 57, art. 5 (Bunn's Ed. sec. 130), of the Constitution.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

In the matter of J. A. Menefee, State Treasurer, and others. Submission to agreed case. From the judgment, the State Treasurer brings error. Affirmed.

On the 20th day of August, A. D. 1908, J. A. Menefee, State Treasurer, and the commissioners of the land office for the state of Oklahoma, submitted for decision of the district court of Logan county the following agreed statement of facts:

That on the 1st day of April, A. D. 1908, the state of Oklahoma issued its certain State funding bond, being in words and figures as follows:

"United States of America, State of Oklahoma.    State Funding Bond.    Series J.

"For value received the State of Oklahoma acknowledges itself to owe, and promises to pay to bearer, the sum of five hundred ($500.00) dollars, at the office of the State Treasurer, or at

the fiscal agency of said state in New York City, on the first day of August, 1927, together with interest therein until paid at the rate of four per cent. per annum, payable semi-annually, on the first days of February and August of each year, as evidenced by coupons hereto attached.

"This bond is one of a series of like date, tenor and amount, issued for the purpose of obtaining money for the outstanding indebtedness of said state under authority of an act of Legislature, entitled 'An act providing for funding the outstanding warrants and other indebtedness of the state of Oklahoma, and the issuing of bonds therefor, providing for the payment of the same, and making an appropriation therefor, and declaring an emergency,' effective March 6, 1908.

"It is hereby certified and recited that all acts, conditions and things precedent to and in the issuing of said bonds have been properly done and performed as required by law.

"In witness whereof, the Governor, State Treasurer, and Secretary of State have executed and signed this bond under the great seal of said state and duly issued the same this first day of April, 1908."

Said bond was duly executed by the Governor, State Treasurer and Secretary of State, and certified to by the State Auditor and the Attorney General. The certificate of the Attorney General is as follows:

"I the undersigned Attorney General of the state of Oklahoma, hereby certify that the within bond has been regularly issued and registered pursuant to the law and within the debt limit and in accordance with the act entitled, 'An act providing for funding the outstanding warrants and other indebtedness of the state of Oklahoma, and the issuing of bonds therefor, providing for the payment of the same and making an appropriation, and declaring an emergency,' approved March 6, 1908 (Laws 1907-08, p. 155, c. 7), and with the Constitutional laws of the state of Oklahoma."

The certificate of the Auditor as amended is substantially the same as that of the Attorney General. Interest-bearing coupons were attached to said bond, duly signed by the State Treasurer. Under the terms of said bond and coupons the same are to be paid at the office of the State Treasurer or at the fiscal agency of said state in New York City on the 1st of August, 1927, to-

gether with interest, etc., at the rate of 4 per cent, per annum, payable semi-annually, on the 1st days of February and August of each year; said bond being one of a series of bonds issued on said date, maturing at the eleventh year after said 1st day of April, 1908, and then for each year thereafter for 10 years. It is claimed by the said commissioners of the school land office that the semi-annual interest on said bond and said bonds is now due, but said Treasurer refuses and fails to pay same for the following reasons: That said bonds were issued under and in pursuance of House Bill 175 (Laws 1907-08, p. 155 c. 7), approved March 6, 1908; that there is a controversy between the said parties as to whether the state of Oklahoma had authority to issue said bonds and thereby fund the indebtedness named in said law; that section 4 of article 1 of the Constitution provides that the debts and liabilities of the territory of Oklahoma were assumed and shall be paid by the state of Oklahoma, but that said article did not make provision for the issuance of bonds for that purpose; that there is no showing on said bond as to whether or not any referendum petition was filed asking for said House Bill 175 to be submitted to a vote of the people; that said act (House Bill 175) included the funding of territorial and state obligations of the state and territory of Oklahoma, and there is a controversy as to whether or not the act is valid under section 57 of article 5 of said Constitution, providing that every act shall have but one subject, which shall be clearly expressed in the title. In so far as territorial debts of the territory of Oklahoma are mentioned as the subject of section 4, art. 1, while state debts are provided for in sections 23, 24 and 25, art. 10, of the Constitution, and in case the Constitution of said state provides that territorial debts be the subject of one provision, and state debts the subject of another provision, there is a controversy as to whether the act is void in embracing more than one subject under section 57, art. 5, thereof.

Further, there is a controversy between the parties as to whether there is any authority in the Constitution for issuing bonds to fund state debts, for the reason that the only provisions of the Con-

stitution as to state debts are sections 23, 24, and 25 of article 10 thereof; that by the provisions of section 23 bonds may be issued to meet cash deficits or failures in revenue; that section 24 of article 10 of the Constitution permits the contracting of debts for the suppression of insurrection; that section 25 of article 10 requires every other debt to be incurred by law passed in a certain manner provided therein; and that the said law mentioned should not take effect until it is voted upon at a general election, and there is a controversy between the parties as to whether the act in question ( House Bill 175) is required to be voted on at a general election before the same becomes effective. Further, that the said bond is dated the 1st day of April, 1908; that said act (House Bill 175) was passed on the 6th day of March, and there is a controversy between the parties as to whether there was an emergency that justified the provision putting said law in effect upon its passage and approval, in accordance with section 58 of article 5 of the Constitution of the state. Further, that there is a controversy as to whether the certificates attached to the bond and endorsed thereon comply with section 29, art. 10, of the Constitution, because it is contended that said section requires a joint certificate signed by the Attorney General and Auditor to the effect that the bond is issued in pursuance of law and within the debt limit, whereas it is contended that the Auditor's certificate does not cover this matter, and that it does not comply with the law because it is not a joint certificate signed by both the Attorney General and Auditor, as shown by the exhibit hereto. Further, that there is a controversy as to whether section 2 of the funding act, being House Bill 175, approved March 6, 1908, makes it possible to determine when the bonds shall become due. Whereupon all the parties prayed a decision of the court upon all of said bonds, not omitting any of them, all the parties desiring to do whatever is required of them by law, but being in doubt as to what their legal duties and obligations are thereunder. Accompanying the agreed case was the affidavit of C. N. Haskell,

J. A. Menefee, and Chas. West, wherein they each deposed that there' was an actual controversy, which depended upon the facts admitted in the accompanying statement; that the controversy was real, and that the proceedings were instituted in good faith to determine the rights of the parties; that such bonds were then held by the commissioners of the land office of the state in pledge for an advance to the state of the face value thereof, and that said J. A. Menefee as the State Treasurer is attempting to negotiate the sale of said bonds to redeem said pledge, and that objection has been made to said bonds, etc.

On the 25th day of August, A. D. 1908, the court rendered judgment on said submitted questions, holding:

(1) That, while section 4 of article 1 of the Constitution provides that the debts and liabilities of the territory of Oklahoma are assumed by the state, yet it does not make any provision for the issuance of bonds for that purpose, in that the Constitution did not prohibit the issuance of the same, and that the authority of the legislature as expressed in the act of March 6, 1908, was sufficient.     It was further held, that there being no constitutional inhibition against said act, the act of the Legislature was sufficient authority for the issuance of said bonds.    And, further, that, if it were necessary for the Constitution to authorize the issuance of the bonds, it would be fairly said that its provisions assuming by the state the territorial indebtedness and requiring the state to pay the same would authorize the doing of all those things necessarily incident to the ultimate thing required.

(2) As to the objection that there was no showing whether or not any referendum petition was filed asking for the act (House Bill 175) to be submitted to a vote of the people, the court held that all the facts necessary to the determination of such questions have been submitted in the agreed statement, and, in the absence of any statement that such a petition had been filed, the court would presume that no request or petition for a referendum had ever been filed.

(3) As to the question as to whether or not the act was

invalid under section 57 of article 5 of the Constitution, requiring every act to have but one subject, which should be clearly expressed in the title, it was held that the territorial indebtedness is now the state indebtedness, the same as those obligations incurred by the state since statehood, and that consequently the act has but one subject, namely, the funding and paying of the state indebtedness.

(4)   As to the objection that the bonds are the creation of a state indebtedness, contrary to the provisions of sections 23, 24, and 25 of article 10 of the Constitution, it was held that the bonds did not create the indebtedness; that the same existed before the issuance of the bonds, the major part of which was made a state indebtedness by the Constitution itself; that the indebtedness incurred by the state since statehood, and which is sought to be funded by the issuance of said bonds, is less than $400,000, and is for the payment of salaries of state officers, and mileage and per diem of members of the Legislature, and is not such a character of indebtedness as is required to be submitted to the people under said section 23.

(5)   The next objection is that the bonds were issued before the act should go into effect; that is, the act was passed on the 6th day of March, and the bonds were issued on the 1st day of April, and under the referendum clause in the Constitution the act did not go into effect until 90 days after the adjournment of the Legislature.   The act, however, contains an emergency clause, and the court was inclined to the opinion that the Legislature is the sole judge as to whether or not an emergency exists, but held that it was not necessary to determine that question, 90 days having expired after the adjournment of the Legislature and the law was then in effect.

(6)   As to the objection that the certificate did not comply with section 29 article 10 of the Constitution, which provided that "no bond of this state shall be valid unless the same shall have indorsed thereon a certificate signed by the Auditor and Attorney General of the State, showing that the bond is issued pursuant

to law, and is within the debt limit," the court held that the Auditor's certificate did not comply with this requirement of the Constitution, and was therefore compelled to hold in the language of the Constitution itself the bonds to be invalid; but held that the certificate need not necessarily be a joint one, that it might be a joint one or separate, but permitted the certificate to be amended.

(7) As to the objection that it is impossible to determine when the bonds shall become due, the court held that section 2 of the act providing that they shall be issued in series running from 10 to 20 years, and the amount of the entire issue shall be divided into ten equal payments, the first payment to become due on the eleventh year after date, etc., it was plain that one-tenth of the bonds are due on the eleventh year, another tenth the twelfth year, and so on until the twentieth year, and that it further appeared that in issuing the bonds the series have been lettered and a place left to number each bond, so that the bonds show for themselves how they have been divided in compliance with the act, and when each becomes due. After the amendment of the certificate by the Auditor, the lower court held the bonds valid, and rendered judgment accordingly. From this judgment an appeal has been prosecuted to this court by the State Treasurer on petition in error.

*Chas. West, Atty. Gen., W. C. Reeves, Asst. Atty. Gen.,* and *E. G. Spilman, Asst. Atty. Gen.,* for plaintiff in error.

WILLIAMS, C. J. (after stating the facts as above). The question to be determined on this record is whether or not the bonds issued pursuant to an act of the Legislature of March 6, 1908 (Laws 1907-08, p. 155, c. 7), are valid, said bonds having been issued to refund an indebtedness of the territory of Oklahoma, which was assumed by the state by section 4 of article 1 (Bunn's Ed. § 6) of the Constitution, and to meet expenses not provided for in a sum less than $400,000.

1. It appears to be conceded that, as to debts for expenses not provided for in a sum not exceeding $400,000 by virtue of sec-

tion 23 of article 10 (Bunn's Ed. § 289) of the Constitution, power was lodged with the Legislature to provide for the issuance of bonds to cover the same without such act being submitted to the people for their sanction, and receiving a majority of all votes cast for and against it at such election (section 25, art. 10, Bunn's Ed. § 291) the decisive question being as to whether or not the Legislature had the authority to provide for refunding bonds to liquidate the assumed territorial indebtedness. The enabling act required that the debts and liabilities of the territory of Oklahoma should be assumed and paid by the state. Act June 16, 1906, c. 3335, § 3, 34 Stat. 267; Bunn's Okla. Const. § 509. Pursuant to said requirement, it is provided in section 4, art. 1 (Bunn's Ed. § 6), of the Constitution, that the debts and liabilities of the territory of Oklahoma are hereby assumed and shall be paid by the state. The state, or rather the people of the state of Oklahoma, when they ratified the Constitution, entered into a solemn contract to pay said indebtedness, which is expressed in said section. Section 23, art. 10 (Bunn's Ed. § 289), of the Constitution, expressly provides that the state may, to meet casual deficits or failures in revenues or for expenses not provided for, contract debts, but such debts, direct or contingent, singly or in the aggregate, shall not at any time exceed $400,000, and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained or to repay the debts so contracted, and to no other purpose whatever. The state having already contracted to pay the debts or liabilities of the territory of Oklahoma, said section 23 could mean nothing other than that the state, in addition to the debts and liabilities of the territory of Oklahoma, to meet casual deficits or failures in revenue or for expenses not provided for, may contract debts, but that such debts, direct and contingent, singly and in the aggregate, in addition to said territorial indebtedness, and such other indebtedness as was assumed by the Constitution, when not to repel invasion, suppress insurrection, or to defend the state in war (section 24, art. 10, Bunn's Ed. § 290), shall not at any time exceed $400,000, and it

is mandatory that the moneys arising from such loans creating such debts shall be applied to the purpose for which they were obtained, or to repay the debts so contracted, and to no other purpose whatever. Section 25, art. 10 (Bunn's Ed. § 291.)

The question further arises as to whether or not the issuing of refunding bonds creates a debt. If so, the act of the Legislature of March 6, 1908 (Laws 1907-08, p. 155, c. 7), providing for the issuance of the refunding bonds, has not taken effect; it having not been submitted to the people at a general election for their sanction, and not having received a majority of all the votes cast for and against it at such election. It has frequently been held that, where bonds have been issued for the express purpose of liquidating an outstanding indebtedness; that such bonds neither created nor increased the public debt, but simply changed its form. *City of Huron v. Second Ward Sav. Bank,* 86 Fed. 272, 30 C. C. A. 38, 57 U. S. App. 593, 49 L. R. A. 534; *Rollins & Sons v. Board of Commissioners of Gunnison County,* 80 Fed. 692, 26 C. C. A. 91, 49 U. S. App. 399. The power to contract a debt for the state under section 23, art. 10 (Bunn's Ed. § 289), of the Constitution, without the sanction of the people having been secured as provided in section 25, art. 10 (Bunn's Ed. § 291), includes the power for the Legislature to provide for the paying or refunding such indebtedness of the state, without reference to the people at a general election for sanction. *Portland Savings Bank v. City of Evansville* (C. C.) 25 Fed. 389; Simonton Mun. Bonds, § 126; *City of Quincy v. Warfield,* 25 Ill. 317, 79 Am. Dec. 330; *Morris v. Taylor,* 31 Or. 62, 49 Pac. 660; *Village of Hyde Park v. Ingalls,* 87 Ill. 13; *Rogan v. City of Watertown,* 30 Wis. 259; *City of Huron v. Second Ward Sav. Bank, supra.*

The Attorney General has cited the case of *Cheney et ux. v. Jones,* 14 Fla. 587, which is an opinion handed down by the reconstruction Supreme Court of that state in passing upon alleged fraudulent bonds issued by its reconstruction government The doctrine in that case declared in sustaining such bonds goes to a further extent than we care to commit this court. The rule herein

announced, and also in the case of *Bryan v. Menefee,* 21 Okla. 1, 95 Pac. 471, is in accordance with the adjudications of the Supreme Courts of North and South Dakota, which states have similar provisions in their Constitutions, as well as the federal adjudications cited.

2. The next question is in regard to the emergency. In the case of *Oklahoma City v. Shields, ante,* p. 265, 100 Pac. 559, the rule was announced that the declaring of an emergency by the Legislature, when it is expressed in the act that such measure is immediately necessary for the preservation of the public peace, health, or safety, when such act is not for the purpose of carrying into effect provisions relating to the initiative or referendum, or a general appropriation bill, or does not include the granting of a franchise or license to a corporation or individual to extend longer than one year, and does not provide for the purchase or sale of real estate, nor the renting or incumbering of real property for a longer period than one year, is conclusive upon the courts. In the case of an enactment for the purpose of carrying into effect provisions relating to the initiative and referendum, or a general appropriation, such bills go into effect upon their passage and approval; but enactments granting a franchise or license to a corporation or individual to extend longer than one year, or containing a provision for the purchase or sale of real estate or the renting or incumbering of real property for a longer period than one year, are not subject to an emergency, and in no event can go into effect until 90 days after the adjournment of the session of the Legislature at which they were passed. This act appears to be of the character of bills that neither take effect immediately after their passage and approval, nor within the class not subject to the emergency. The Legislature having declared the emergency and expressed its judgment therein, the same is conclusive upon the courts.

3. As to the objection that the title of the act, being "An act providing for funding the outstanding warrants and other indebtedness of the state of Oklahoma, and the issuing of bonds

therefor; providing for the payment of the same and making an appropriation therefor, and declaring an emergency," is in conflict with section 57, art. 5 (Bunn's Ed. § 130), of the Constitution, requiring every act to have but one subject which shall be clearly expressed in the title, there is no merit in this contention. *City of Pond Creek v. Haskell et al.,* 21 Okla. 711, 97 Pac. 338; *Noble State Bank v. Haskell et al., ante,* p. 48, 97 Pac. 590; *Woodson v. Murdock,* 22 Wall. 351, 22 L. Ed. 716; *Ballentyne v. Wickersham,* 75 Ala. 539; *Lindsay v. United State Savings & Loan Association,* 120 Ala. 156, 24 South. 171, 43 L. R. A. 783.

4. The certificates as amended comply with the provisions of section 29, art. 10 (Bunn's Ed. § 295), of the Constitution, which provides that no bond or evidence of indebtedness of this state shall be valid unless the same shall have indorsed thereon a certificate, signed by the Auditor and Attorney General of the State, showing that the bond or evidence of debt is issued pursuant to law, and within the debt limit. The certificates of the Auditor and the Attorney General appear to comply with this provision. It is not necessary that the certificate should be jointly executed, but may be made by each separately.

5. As to the objection that it is impossible to determine when the bonds shall become due, as was said by the lower court, there is no merit in this contention. Section 2 of the act provides that they shall be issued in series, running from 10 to 20 years, and the amount of the entire issue shall be divided into 10 equal annual payments, the first payment to become due on the eleventh year, after date, etc. It is claimed that one tenth of the bonds are due on the eleventh year, another one-tenth the twelfth year, and so on until the twentieth year. It further appears that in issuing the bonds the series have been lettered and a place left to number each bond, so that the bonds must show for themselves how they have been divided in compliance with the act, and when each becomes due.

No error appearing in the record, the judgment of the lower court is affirmed.

All the Justices concur.