## In re STATE FUNDING BONDS OF 1935, SERIES B.

No. 26630.  Sept. 27, 1935.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for the State.

OSBORN, V. C. J. This is an original proceeding brought in the Supreme Court through the State Board of Equalization pursuant to the provisions of article 1, chapter 27, Oklahoma Session Laws 1935, the same being House Bill No. 217, as enacted by the Fifteenth Legislature of Oklahoma, for the purpose of funding certain outstanding and unpaid state warrants drawn against the general revenues of the state, pursuant to appropriations made by law for fiscal years prior to the fiscal year beginning July 1, 1935, and aggregating with interest thereon to October 1, 1935. the sum of $3,-100,000. It is made to appear from the application and evidence submitted that it is the purpose of the State Board of Equalization to fund said warrant indebtedness by the issuance of negotiable coupon bonds of the state of Oklahoma designated "Funding Bonds of 1935, Series B," in the sum of $3,-100,000, dated October 1, 1935. It also appears that said bonds have been sold at an advertised sale to the Commissioners of the Land Office of the state of Oklahoma for par and accrued interest and the proceeds of said sale are to be used in paying and canceling the warrants funded by said series of bonds. The bonds are not to be delivered to the purchaser unless and until a like amount of the warrants funded by said series of bonds have been satisfied and paid.

Section 3 of article 1, chapter 27, supra, conferred exclusive original jurisdiction upon the Supreme Court to hear and determine said application to fund. The application was filed in the office of the Clerk of the Supreme Court on the 13th day of September, 1935. Notice was given by publication in a legal newspaper of general circulation in the state for ten consecutive days that the application would be presented to the Supreme Court for a hearing thereon on the 24th day of September. 1935, and that all persons interested might file a protest against the issuance of said series of funding bonds and contest the issuance of said series or any part thereof. Said notice stated the amount of indebtedness sought to be funded, and that it was represented by state warrants. We, therefore, find and determine that said notice was given in conformity to the statute.

On the 24th day of September, 1935, the hearing on the application was continued until 1:30 p. m. on the 25th day of September, 1935, and the matter referred to Vice Chief Justice Osborn for the taking of testimony. No protest was filed against the issuance of the bonds or any part thereof and no one appeared to contest the issuance of said bonds or any part thereof.

The applicant, the state of Oklahoma, through the State Board of Equalization, appeared by the Attorney General, and submitted testimony in proof of the existence, validity. and amount of the state warrants sought to be funded, and tendered to the court for its approval the "Funding Bonds of 1935, Series B", of the state of Oklahoma.

The evidence submitted discloses that said warrants were drawn against the general revenues of the state pursuant to appropriations made by law for fiscal years prior to the fiscal year beginning July 1, 1935; that said warrants were drawn by the State Auditor on claims against the state of Oklahoma, which were audited and allowed by the State Auditor; that said claims were for miscellaneous expenses of the state, its departments and institutions; that the warrants were within the amounts of the appropriations against which they were drawn and were for the purposes for which said appropriations were made; that the warrants had been registered as nonpayable by the State Treasurer; that they have not been paid, but are outstanding obligations of the state of Oklahoma, and that there are no moneys on hand in the State Treasury to pay the same; that said warrants were drawn against appropriations made by law for the fiscal years 1933-34 and 1934-35, as set forth in the Session Laws of Oklahoma of 1933 and 1935, and the statutes of Oklahoma; that said warrants aggregate the principal sum of $2,946,541.36 and

with interest at the rate of 6 per cent. per annum from the date of their registration as nonpayable to October 1, 1935, equal the total sum of $3,100,000. A book describing the warrants being funded was introduced in evidence. The description of the warrants as set forth in said book includes the date of the warrants, the appropriation against which drawn, the fiscal year series, the name of the payee, the principal amount, and the number of the warrants. We, therefore, find and determine said warrant indebtedness of the state of Oklahoma to exist in the total sum of $3,100,000, as of October 1, 1935, and that said warrants are valid and existing obligations of the state of Oklahoma subject to being funded in accordance with the provisions of article 1, chapter 27, supra.

The bonds and coupons designated "Funding Bonds of 1935, Series B," aggregating the principal sum of $3,100,000, tendered to the court, are in proper form. The resolutions adopted by the State Board of Equalization authorizing the sale of said bonds and providing for their issuance and prescribing their form and fixing the other details of their issuance were introduced in evidence. Said bonds are dated October 1, 1935, and mature $310,000 on the 30th day of June of each year beginning in 1937 and ending in 1946. The bonds bear interest evidenced by coupons attached to the bonds which mature semiannually on the first days of April and October of each year. The bonds maturing in 1937 and 1938 bear interest at the rate of 1 3/8 per cent. per annum; the bonds maturing in 1939, 1 1/2 per cent. per annum; in 1940, 1 3/4 per cent. per annum; in 1941, 2 per cent. per annum; in 1942, 2 1/8 per cent. per annum; in 1943, 2 1/4 per cent. per annum; in 1944, 2 1/2 per cent. per annum; in 1945, 2 3/4 per cent. per annum; in 1946, 2 7/8 per cent. per annum. The bonds are personally signed by the Governor and Secretary of State, under the seal of the state, and are countersigned by the State Treasurer. The bonds recite that they are issued under authority of House Bill No. 217, supra, and that the full faith, credit, and resources of the state are pledged to the payment of the principal and interest of said bonds. We therefore find said bonds and coupons to have been authorized and prepared in accordance with the provisions of article 1, chapter 27, supra, and said bonds are approved in their total sum of $3,100,000.

Article 1, chapter 27, supra, authorizes the State Board of Equalization in issuing funding bonds under authority of that act to is-

sue the bonds under either of two plans the first plan being the exchange method, that is, where the bonds are issued in exchange for the warrants which are funded, and the other plan is the sale plan, that is, where the funding bonds are sold, and the money derived from their sale is used simultaneously with the delivery of the bonds to the purchaser in the payment and cancellation of the warrants funded by the bonds sold. The Funding Bonds of 1935, Series A, which were before this court in the case of In the Matter of the Application of the State of Oklahoma to determine the existence, validity, and amount of certain of its outstanding warrant indebtedness and to issue its bonds designated, "Funding Bonds of 1935, Series A," to fund the same, 173 Okla. 622, 50 P. (2d) 221, in the Supreme Court, are being issued in exchange for warrants funded by said bonds. Series B of the Funding Bonds of 1935 are funding the warrants which were held by holders who did not agree to accept bonds in exchange for their warrants.

The same legal questions are involved in the issuance of this series of bonds as were involved in the application for the approval of the Series A bonds, supra, and we refer to and adhere to the opinion of this court in that case. There is, however, the additional question of whether the limitations contained in sections 23, 24, and 25 of article 10 of the Constitution of Oklahoma are violated by the issuance of funding bonds under the sale method, that is, where the bonds are sold and the proceeds used to pay and cancel the warrants which are funded. Section 6 of article 1, chapter 27, supra, reads as follows:

"The State Board of Equalization is authorized to enter into a contract for the sale of the bonds either before or after the bonds are approved by the Supreme Court. The sale of bonds issued under this act shall be had and conducted by the State Board of Equalization in such manner as it deems is to the best interest of the state, except no bonds shall be sold for less than an amount sufficient to pay the principal and interest of the particular treasury notes or warrants funded by the bonds sold. No bonds authorized to be sold under the provisions of this section shall be delivered to the purchaser, or become binding obligations of the state unless, and until, a like amount of outstanding warrants or treasury notes indebtedness is satisfied and paid. For the purpose of rendering effective the foregoing provisions, the State Equalization Board shall devise a plan whereby the funds derived from the sale of the bonds herein authorized shall be used to retire outstanding warrants or treasury notes. The state treas-

urer when directed by the said board shall call outstanding warrants for payment, either as a whole or in blocks. After the call day, said warrants shall bear no further interest.

"If all of the warrants funded by a series of bonds are not presented when called for payment, or the amount of bonds approved does not correspond to the amount of warrants presented for payment, the State Board of Equalization shall have authority to readjust the bonds and reduce the amount thereof to effectuate the funding of the warrants presented. Any warrants not presented for payment on the date set forth in the call, and not funded, shall be funded in a subsequent series of bonds issued under this act.

"Said plan shall provide for the continuous retirement of warrants as presented, until all of the outstanding warrants shall be retired. Likewise, the State Treasurer may be directed to receive outstanding treasury notes for retirement. Said plan, so devised, shall be for the purpose of effecting retirement of the outstanding warrants and treasury notes simultaneously with the delivery of the bonds sold. The proceeds of the sale of bonds shall be deposited in the office of the State Treasurer for a sufficient time to effect the retirement of outstanding warrants and treasury notes and shall be held by the State Treasurer, as a trust fund to be used for no other purpose than paying the principal and interest of said warrants and treasury notes. No commission or fee shall be paid any person for selling said bonds. Nothing in this provision shall be construed in such way as to prevent the exchange of funding bonds for outstanding warrants and treasury notes."

This provision is embraced within the title to the act, as the title contains the c'ause "and authorizing the bonds to be either sold or exchanged for the purpose of paying and canceling the * * * warrants funded."

It should be noted that section 6, quoted above, expressly provides that no bonds issued under authority of said act shall be delivered to the purchaser, or become binding obligations of the state unless, and until, a like amount of the outstanding warrants funded is satisfied and paid. The retirement or payment and cancellation of the warrants funded is to be simultaneous with the delivery of the bonds. Under this plan no new debt is created, but the form of the debt is changed. In re Menefee, State Treas., 22 Okla. 365, 97 P. 1014, and cases there cited.

The weight of authority supports the doctrine that the issuance of bonds for the purpose of funding a valid debt does not create a new indebtedness, although they are sold

and their proceeds devoted to the discharge of the outstanding debt, rather than exchanged for the evidence of such debt. There is no substantial ground for a distinction between the two methods of issuing funding bonds, where the proceeds of the sale are actually used for the retirement of the outstanding obligations funded. 97 A. L. R. 448, 452; vol. 6, McQuillin on Municipal Corporations (2d Ed.) section 2385.

The prayer of the application filed in this cause is hereby granted and it is the judgment of the court that the funding bonds tendered for approval designated "Funding Bonds of 1935, Series B," of the state of Oklahoma in the total sum of $3,100,000, be and the same are approved, and when this decision has become final, said bonds shall be signed by the Chief Justice of the court, thereafter sold and delivered as hereinabove provided.

Pursuant to the provisions of section 4 of article 1, chapter 27, supra, the time within which a petition for rehearing may be filed in this cause is hereby limited to within 3 days from the filing of this opinion with the clerk of this court.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.