Dear Honorable Hooper,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Do the provisions of the General Obligation Public Securities Refunding Act, 62 O.S. 751 (1984) et seq., violate Article X, Section 26 of the Oklahoma Constitution by allowing a public body under certain circumstances to refund outstanding indebtedness obligations without a vote of the people at an election held for this purpose:
 a. Where the original obligations are canceled concurrently with the issuance of refunding obligations; or
 b. Where the net proceeds of the refunding bonds are placed into escrow or trust for the purpose of paying or redeeming and retiring the original bonds at a designated future date?
 2. Does the General Obligation Public Securities Refunding Act, 62 O.S. 751 (1984) et seq., violate Section 103(j) of the federal Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C.A. 103, in that it permits refunding bonds to be either in coupon or registered form?
 INTRODUCTION
Your questions concern those specific provisions of the Public Securities Refunding Act, 62 O.S. 751 (1984) et seq. (hereinafter the "Act"), which authorize a public body, under certain conditions, to issue general obligations in order to refund outstanding public obligations. Refunding in this context is the issuance of new obligations, the proceeds of which are used to retire outstanding indebtedness. The retirement may be immediate or, where the bonds are not subject to immediate retirement and redemption, may be accomplished by placing the proceeds of the refunding obligations into escrow and retiring the bonds as they come due. See A.G. Opin. No. 77-143. Such refunding is to be done in contemplation of, inter alia, a savings in the net effective interest rate, the total interest payable, or the total principal and interest payable on the obligations. With respect to the provisions of the Act itself, 62 O.S. 753 (1984) provides that:
 "A. A refunding of outstanding obligations of a public body pursuant to the provisions of the General Obligation Public Securities Refunding Act shall only occur for the following purposes:
 "1. Avoiding or terminating any default in the payment of interest on or principal of, or both, of obligations provided a postponement in the maturity date of all or any portion of obligations shall be approved at an election as provided for in Section 4 of this act; or
 "2. Reducing the net effective interest rate of obligations; or
 "3. Reducing the total interest payable over the life of obligations; or
 "4. Reducing the total principal and interest payable on obligations; or
 "5. Any combination of the purposes specified in this subsection.
 "B. A refunding of outstanding obligations of a public body may be accomplished pursuant to the provisions of the General Obligation Public Securities Refunding Act by the issuance, without an election except as otherwise provided in the General Obligation Public Securities Refunding Act, of bonds for refunding, paying, and discharging all or any part of the outstanding obligations, including a portion of one or more issues of the obligations and including any interest thereon in arrears or about to become due." (Emphasis added).
Moreover, Section 754(F) of the Act provides that:
 "In no event shall general obligations be refunded except for the purposes specified in paragraph 1 of subsection A of Section 3 of this act, and not unless the total of the principal and interest payable over the life of the refunding bonds and the expenses incurred in issuing the refunding bonds shall be less than the total of the principal and interest payable over the life of the refunded obligations." 62 O.S. 754 (1984).
Furthermore, Section 62 O.S. 755(A) of the Act provides:
 "The principal amount of the refunding bonds may be less than, more than, or the same as the principal amount of the obligations being refunded, if there is a provision for the payment in full and discharge of such refunded obligations. The principal amount of the refunding bonds may be greater than the principal amount of the bonds being refunded only if the total principal and interest of the refunding bonds is less than the total principal and interest of the bonds being refunded." (Emphasis added).
It is a fundamental rule of statutory construction that where the language of a statute is plain and unambiguous, there is no room for construction thereof. Cavett v. Geary Board of Education, 587 P.2d 991,993 (Okla. 1978).
In setting out the purposes for which the refunding may be accomplished and the conditions thereon, Sections 62 O.S. 753/62 O.S. 754(F), and 62O.S. 755(A) are plain and unambiguous. Moreover, per the plain terms of Section 62 O.S. 754(F), no "[g]eneral obligations [shall] be refunded except for the purposes specified in paragraph 1 of subsection A of Section 3 of this act [62 O.S. 753 (1984)] and not unless the total of principal and interest payable over the life of the refunding bonds and the expenses incurred in issuing the refunding bonds shall be less than the total of the principal and interest payable over the life of the refunded obligations."
Section 62 O.S. 753, discussed above with respect to the circumstances under which such refunding could be undertaken, also sets forth the conditions under which a public body is required to seek public approval of the refunding of general obligations.
Title 62 O.S. 754(A) (1984), referenced in Section 753 above, provides, in pertinent part, that:
 "[A]pproval of the refunding by an election held in the same manner as required for the issuance of the general obligations being refunded shall be required if the refunding extends the maturity date of the obligations."
These provisions are plain and unambiguous as well. Cavett v. GearyBoard of Ed., supra.
 I.
In your initial question, you inquire as to whether, notwithstanding the restrictions on the permissible purposes for which obligations may be refunded, the issuance of new obligations by an issuer for refunding purposes may be accomplished without a public vote and yet fall within the parameters of Article X, Section 26 of the Oklahoma Constitution. We begin our analysis by noting that the Legislature is presumed to have acted in a constitutional fashion. See, Way v. Grand Lake Ass'n, Inc., 635 P.2d 1010
(Okla. 1981), citing, Herndon v. Anderson, 25 P.2d 326 (Okla. 1933). As you note in your question, the Act authorizes a public body to issue refunding bonds for the immediate retirement of outstanding bonds or for the placement of the new proceeds of the refunding bonds in escrow in order to retire the outstanding bonds as they come due.
The provisions of Article X, Section 26 read in pertinent part:
 "Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness." (Emphasis added).
Generally, this section requires the assent of the electorate when a political subdivision seeks to incur indebtedness exceeding the income and revenue for the current year. Board of County Com'rs of Tulsa County v.Summers, 73 P.2d 409 (Okla. 1937).
With respect to status of refunding bonds, 62 O.S. 754(H) (1984) provides that:
 "The issuance of refunding bonds by any public body pursuant to the provisions of the General Obligation Public Securities Refunding Act shall not be interpreted to be the creation of debt or indebted such that the issuance would require the approval at an election in accordance with the Constitution or laws of this state. No such approval shall be required for the issuance of such refunding bonds except as provided for in the General Obligation Public Securities Refunding Act. Any obligations which have been refunded, pursuant to the provisions of the General Obligation Public Securities Refunding Act, either by immediate payment or redemption and retirement or by the placement of net proceeds of refunding bonds in escrow shall continue to be considered general obligations but shall not be deemed outstanding for purposes of determining compliance with debt limitations from and after the date on which sufficient moneys are placed either with the paying agent of such outstanding obligations for the purpose of immediately paying or redeeming and retiring such bonds or with the escrow agent for the purpose of paying or redeeming and retiring such bonds at a designated future date." (Emphasis added).
By the plain terms of this provision, the Legislature has determined that "[t]he issuance of refunding bonds by any public body pursuant to the Act . . . shall not be interpreted to be the creation of debt or indebtedness such that the issuance would require the approval at an election." We reiterate the notion that the Legislature is presumed to have acted constitutionally. Way v. Grand Lake Ass'n, Inc., supra. Moreover, only Section 62 O.S. 754(A), cited in the introduction above, mandates an election in conjunction with the issuance of refunding bonds and then only where the maturity date of outstanding obligations is extended. 62 O.S. 754(A) (1984). Notwithstanding the legislative determination above and the presumption of constitutionality, we are obligated to consider both methods of refunding in terms of Art. X, 26 above.
 A. OBLIGATIONS SUBJECT TO IMMEDIATE RETIREMENT AND REDEMPTION
Section 62 O.S. 756(A) above provides that "[t]he proceeds derived from the issuance of refunding bonds pursuant to the [Act], together with other legally available funds, if any, of the public body, shall . . . be immediately applied to the payment or redemption and retirement of the obligations to be refunded. . . ." It must be assumed that the bonds to be immediately retired are not subject to any contractual limitations preventing their immediate retirement. See 62 O.S. 754(A) (1984). Our research has disclosed that refunding bonds issued concurrently with the cancellation of existing indebtedness have been the subject of several older Oklahoma decisions. In the case of In re Menefee, 97 P. 1014
(Okla. 1908), the Supreme Court of Oklahoma stated that:
 "It has frequently been held that, where bonds have been issued for the express purpose of liquidating an outstanding indebtedness, that such bonds neither created nor increased the public debt, but simply changed its form. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 30 C.C.A. 38, 57 U.S.App. 593, 49 L.R.A. 534; Rollins Sons v. Board of Commissioners of Gunnison County, 80 Fed. 692, 26 C.C.A. 91, 49 U.S. App. 399." 97 P. at 1018.
Subsequently, in State v. West, 118 P. 146 (Okla. 1911), the Court, discussing Article X, Section 26 of the Oklahoma Constitution, stated:
 "It is true that section 26 limits the indebtedness which may be legally created without a popular vote, but it has no bearing on proceedings for the refunding of an indebtedness once legally created, except in so far as it lays down the rule that the court must follow in determining whether the original indebtedness was legally created.
 "Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted, provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt. In re Menefee, 22 Okla. 365, 97 P. 1014." 118 P. at 149.
A number of later cases have adhered to this interpretation of Article X, Section 26 in the context of refunding bonds issued concurrent with the cancellation of the existing indebtedness. See, Board of Education ofTown of Carmen, Okla. v. James, 49 F.2d 91 (10th Cir. 1931); In reFunding Bonds of 1941, Series A, 119 P.2d 558 (Okla. 1941); In re FundingBonds of 1935, Series B, 50 P.2d 226 (Okla. 1935); Faught v. City ofSapulpa, 292 P. 15 (Okla. 1930).
Accordingly, where the proceeds of the refunding bonds are utilized for the immediate payment and cancellation of the existing indebtedness, no new indebtedness is created. Such a transaction does not violate the terms of Article X, Section 26. State v. West, supra.
 B. OBLIGATIONS NOT SUBJECT TO IMMEDIATE RETIREMENT
In those instances where the original obligations are subject to contractual limitations preventing their early retirement or redemption, the Act permits the issuer to place the net proceeds in escrow or trust for the retirement of obligations as they come due. Section 62 O.S.754(H), supra. You question the validity of this procedure in light of Article X, Section 26.
The refunding method utilizing the escrow or trust account is typically called "Advanced Refunding." See, State v. City of Sunrise, 354 So.2d 1206
(Fla. 1978). Generally, in an "Advanced Refunding" proceeding, the proceeds of the refunding bonds are placed in an escrow or trust account and invested in federal securities bearing interest sufficient, with any cash retained in the account, for the payment and discharge of the interest of the original obligations. Application of Board of Regents ofUniv. of Okl., 427 P.2d 429 (Okla. 1966); Application of OklahomaTurnpike Authority, 416 P.2d 860 (Okla. 1966); A.G. Opin. No. 77-143.
While the Attorney General in the above-cited opinion approved the Advanced Refunding of general obligation bonds of the State Building Bonds Commission, there was no discussion of this practice in terms of Article X, Section 26 or its state counterpart, Article X, Section 23. Nor do the cases cited above, or any other Oklahoma authority, pass on this question. The absence of relevant Oklahoma authority compels us to search the authority of other jurisdictions to guide our response.
The Oklahoma Supreme Court in both the cases cited above and the Attorney General in A.G. Opin. No. 77-143, quoted the Supreme Court of New Mexico in City of Albuquerque v. Gott, 389 P.2d 207 (N.M. 1964). Based on the majority opinion from other jurisdictions, the Court inGott held that:
 "To our view, where there are funds in the irrevocable escrow account available to meet an indebtedness, the obligation cannot be termed an `outstanding' indebtedness, in the ordinary sense. See Southwest Securities Co. v. Board of Education of Village of Lovington, supra, and Board of Education Etc. v. Woodmen of the World (10th Cir. 1935), 77 F.2d 31, a case involving a school district of Torrance County, New Mexico, wherein it was said that refunding does not increase the debt of the municipality. In our opinion, the plan here involved may be analogized to that of a sinking fund, and it is generally held that sinking funds are not debts within the meaning of constitutional debt-limit provisions. See 15 McQuillin, Municipal Corporations, 3d ed., 41.40.
 "While it is true that, technically speaking, upon the issuance of the refunding bonds there will appear to be an indebtedness which exceeds the constitutional limitation, however, this is more a matter of form than of substance. We cannot presume that elected officials are dishonest, but will, to the contrary, assume that they will fulflll their legal duty. Any other result would, in effect, prohibit the issuance of refunding bonds, unless the original bonds are canceled simultaneously. With modern methods of finance, this is an obvious impossibility, and even though the precise plan may not have been contemplated by the constitution makers, in our view it does no violence to the provisions of the constitution. Where the proceeds of the refunding bonds are placed in escrow or a trust fund, for the sole purpose of paying off the original indebtedness, the latter bonds cannot be considered as an increase in the indebtedness of the city. See Citrus G. D. Assn. v. Water Users' Assn., supra, and Board of Education, Etc. v. Woodmen of the World, supra." 389 P.2d at 209-210
(Emphasis added).
The court in Gott concluded that the ten-year period for retirement of the original obligations was not unreasonable and that the advanced refunding scheme was within the permissible parameters of the debt limitation provisions of the New Mexico Constitution.
Just as the Gott decision then proclaimed the position of a majority of jurisdictions, so has it continued to represent the same majority position. Evidencing this fact is the recent decision of the Supreme Court of Appeals of West Virginia in Bd. of Educ. of County of Hancock v.Slack, 327 S.E.2d 416 (W.Va. 1985), where the court, in citing Gott, approved the advanced refunding of school board general obligation bonds.
Citing Keeney v. County Court, 175 S.E. 60 (W.Va. 1934), the court inSlack concluded that:
 "There is no question that the majority of jurisdictions still hold that refunding bonds do not create a new indebtedness. See also Taxpayers and Citizens v. Shelby County, 246 Ala. 192, 20 So.2d 36
(1944); Allison v. City of Phoenix, 44 Ariz. 66, 33 P.2d 927 (1934); State v. City of Miami, 155 Fla. 180, 19 So.2d 790, 1 A.L.R.2d 132 (1944); Veatch v. City of Moscow, 18 Idaho 313, 109 P. 722 (1910); State ex rel. St. Charles County v. Smith, 348 Mo. 7, 152 S.W.2d 1, 135, A.L.R. 625 (1941); Williams v. City of Rock Hill, 177 S.C. 82, 180 S.E. 799, 100 A.L.R. 604
(1935); Rodin v. State ex rel. City of Cheyenne, 417 P.2d 180 (Wyo. 1966); 64 Am.Jur.2d Public Securities and Obligations § 267 (1972). The Secretary cites Doon v. Cummins, 142 U.S. 366, 1 S.Ct. 220, 35 L.Ed. 1044 (1892), in which the United States Supreme Court held under an Iowa constitutional provision that refunding bonds used to liquidate original bonds constituted new indebtedness. The New Mexico Supreme Court in City of Albuquerque v. Gott, 73 N.M. 439, 442, 389 P.2d 207, 209 (1964), in speaking of Doon, stated:
 " `[I]t is decidedly a minority view, even to the extent that United States Circuit Courts of Appeal have on numerous occasions distinguished the Doon case (see, for example, City of Huron v. Second Ward Sav. Bank (8th Cir. 1898),86 F. 272, 49 L.R.A. 534), and it has been said by most courts that no new indebtedness is created, particularly where the proceeds of the refunding are applied to municipal indebtedness, annot. 97 A.L.R. 452-457.'" 327 S.E.2d at 425.
Additionally, we note that advanced refunding utilizing the escrow or trust account is analogous to a sinking fund as defined under Oklahoma law. See Okla. Const., Article X, Section 28. Such funds are created by political subdivisions from tax levies for the specific purpose of making the periodic interest payments of outstanding bonds or making principal payments of the bonds as they all due, and for making payments of judgments of the political subdivisions. Of relevance to our present discussion, the amounts in the sinking fund are deducted from the amount of outstanding bonded indebtedness in order to determine the net indebtedness. State v. Williamson, 97 P.2d 74 (Okla. 1939); Reynolds v.State, 217 P. 166 (Okla. 1923). Likewise, the proceeds of the refunding bonds are placed in escrow or trust for the sole purpose of liquidating the original indebtedness.
Accordingly, mindful of the presumption favoring constitutionality, we preliminarily conclude that "Advanced Refunding" utilizing the escrow or trust accounts does not violate the provisions of Article X, Section 26
of the Oklahoma Constitution. However, the Slack court conditioned its approval of advanced refunding on the meeting of certain conditions or constraints. We now consider the Act in terms of these constraints in order to finalize our response to your questions.
 C. CONSTRAINTS ON ADVANCED REFUNDING 1. AMOUNT OF REFUNDING BONDS
In ruling that refunding bonds in an advanced refunding plan do not create a new debt, and therefore, may be issued without voter approval, the court in Slack initially concluded that such bonds could not increase the total indebtedness authorized by the voters on the original bond issue. As the court stated:
 "The rule that refunding bonds do not create a new debt and, therefore, may be issued without voter approval under Article X, Section 8 and 10 of the West Virginia Constitution is subject to certain qualifications. First, the amount of refunding bonds cannot increase the total indebtedness authorized by the voters on the original bond issue." 327 S.E.2d at 425. (Emphasis added).
Considered together, Article X, 8 and 10 of the West Virginia Constitution are virtually identical to Article X, 26 of the Oklahoma Constitution. Moreover, the Act contemplates a similar constraint. Section 62 O.S. 754(F) provides that:
 "No general obligation may be refunded unless the holder of the general obligation voluntarily surrenders it for exchange of payment or the general obligation either matures or is callable by the issuer for prior redemption under its terms within twenty-five (25) years from the date of issuance of the refunding bonds, and provision shall have been made in such refunding for paying the obligation being refunded within said period of time. In no event shall general obligations be refunded except for the purposes specified in paragraph 1 of subsection A of Section 3 of this act, and not unless the total of the principal and interest payable over the life of the refunding bonds and the expenses incurred in issuing the refunding bonds shall be less than the total of the principal and interest payable over the life of the refunded obligations."
It is necessarily a factual determination, one that must be made prior to refunding, whether "the total indebtedness authorized by the voters on the original bond issue is being increased" through the refunding of the original bond issue. Slack, supra at 425. Likewise, it must be ascertained that "the total of the principal and interest payable over the life of the refunding bonds and the expenses incurred in issuing the refunding bonds shall be less than the total of principal and interest payable over the life of the refunded obligations." 62 O.S. 754(F) (1984).
 2. MATURITY SCHEDULE OF REFUNDING OBLIGATIONS
The court in Slack concluded that "[r]efunding bonds may not be liquidated over a period longer than authorized for the original bond issue. [Citations omitted.]" 327 S.E.2d at 426. Section 62 O.S. 754(A) of the Act sets forth this same limitation. Only if approved by the electorate in an election identical to that of the original issue may the refunding extend the maturity date of the obligations. 62 O.S. 754
(1984).
 3. TAX LEVY
When the taxpayers approved the original bond issue, they were authorizing the issuance of a specified amount of bonds to be liquidated over a predetermined period, and bear interest up to a certain percentage. The voters were also authorizing a levy sufficient to ensure the annual principal and periodic interest payments. The court in Slack
concluded that the refunding plan must fall within the parameters of this initial levy to avoid the requisite public approval of the refunding.327 S.E.2d at 426.
The Act authorizes refunding only for certain specific purposes. These purposes contemplate certain savings in the net effective interest rate, the total interest payable, or the total principal and interest payable on the obligations. Section 753, supra. In A.G. Opin. No. 77-143, the Attorney General stated that "[t]he savings [from refunding] will occur as a result of less . . . tax being required to retire the bonded indebtedness." Accordingly, it may reasonably be concluded that the levy originally approved by the voters may not be exceeded to accomplish the refunding and achieve the savings contemplated by the Act. Udall v.Udall, 613 P.2d 742 (Okla. 1980). (In ascertaining legislative intent, the language of the entire Act should be construed with a reasonable and sensible construction.) Okla. Const. Article X, Section 26. Slack, supra at 416, n. 12.
 4. ESCROW OF PROCEEDS OF REFUNDING BONDS
Like the West Virginia Act analyzed in Slack, the use of an escrow or trust account to liquidate or defease the bonds originally issued is specifically authorized by the Act. The court noted that even in the absence of statutory authorization, other courts have held that the escrow technique is an acceptable method of retiring the original bond issue. 327 S.E.2d at 427, n. 13 (citations omitted).
With respect to the escrow of the proceeds of refunding bonds, Section 62 O.S. 756(C) of the Act provides that:
 "For the purpose of implementing the provisions of the General Obligation Public Securities Refunding Act, the governing body shall have the power to enter into escrow agreements and to establish escrow or trust accounts with any qualified escrow agent under protective covenants and agreements whereby such accounts shall be fully secured as provided for in Section 7 of this act."
Moreover, with respect to money placed in escrow, Section 62 O.S. 757
provides that:
 "A. Moneys placed in any escrow or trust account shall not necessarily be limited to proceeds of refunding bonds but may include other moneys legally available for that purpose.
 "B. Any moneys in an escrow or trust account, pending use for their intended purpose, may be invested or reinvested only in federal securities.
 "C. The escrow agent shall continuously secure any moneys placed in an escrow or trust account and not so invested or reinvested in federal securities by a pledge of federal securities with a market value determined on a daily basis at least equal to the total uninvested moneys held in such escrow or trust account in strict accordance with the provisions of the escrow agreement. The re quirements of this subsection shall not apply to any said uninvested moneys insured by the Federal Deposit Insurance Corporation.
 "D. Such moneys and investments in the escrow or trust account, together with the interest or other gain to be derived from any such investments, shall at all times be at least sufficient to make all of the payments required to be made pursuant to the escrow agreement in the manner and at the times specified in the escrow agreement. The computations made in determining such sufficiency shall be verified by a certified public accountant. Said computations shall be certified within five (5) days prior to the delivery of and payment for the refunded bonds."
The propriety of this method of refunding has been discussed by the Supreme Court of Wyoming in Rodin v. State, 417 P.2d 180, 189 (1966), where the court held that:
 "[T]he irrevocable and positive commitment of moneys made presently available through the sale of refunding bonds, for either the immediate or future payment of both principal and accruing interest of outstanding securities, must be considered as an acceptable substitute for the actual discharge of debt, otherwise the bondholder could, by the unilateral act of withholding presentation for payment of the evidence of debt, have the debt continued until statutes of limitation run, thus defeating a municipality's opportunity to finance its necessary future needs."
See also Albuquerque v. Gott, supra.
Pursuant to Section 62 O.S. 757 above, the "moneys in an escrow of trust account may be invested or reinvested only in federal securities." Moreover, the "moneys and investments in the escrow or trust account, together with the interest or other gain to be derived from any such investments, shall at all times, be at least sufficient to make all of the payments required to be made pursuant to the escrow agreement. . . ." Furthermore, "[t]he computations made in determining such sufficiency shall be verified by a certified public accountant." Said computations shall be certified within five (5) days prior to the delivery of and payment of the refunded bonds. 62 O.S. 757 (1984). Accordingly, placement of the proceeds of refunding bonds in an escrow or trust account, in the method specified by the Act, is a permissible method of retiring the outstanding obligations. Application of Board of Regents of Univ. ofOkl., supra, at 435.
 II.
Your second and final question concerns certain provisions of the Act as they relate to the federal Tax Equity and Fiscal Responsibility Act of 1982 (hereinafter "TEFRA"). Specifically, you inquire about 62 O.S. 755
(1984) of the Act which provides:
 "B. Refunding bonds issued pursuant to the provisions of the General Obligation Public Securities Refunding Act shall:
* * *
 "3. Be in coupon or registered form. . . ." (Emphasis added).
By your question, you discern conflict between the section above and Section 103(j) of TEFRA, 26 U.S.C.A. 103(j), which provides:
 "(1) In general. — Nothing in subsection (a) or in any other provision of law shall be construed to provide an exemption from Federal income tax for interest on any registration-required obligation unless the obligation is in registered form.
 "(2) Registration-required obligation. — The term `registration required obligation' means any obligation other than an obligation which--
"(A) is not of a type offered to the public,
 "(B) has a maturity (at issue) of not more than 1 year, or
 "(C) is described in Section 163(f)(2)(B)." (Emphasis added).
Plainly, this section does not mandate that refunding obligations be in registered form and, therefore, does not conflict with Section 62 O.S.755. Cavett v. Geary Board of Education, supra. However, per subsection (2) above, any refunding bond which may be classified as a "registration-required obligation" must be in registered form for the interest on such obligation to be exempt from federal income tax. See,South Carolina v. Regan, 465 U.S. 367, 79 L.Ed.2d 372, 104 S.Ct. 1107
(1984). (The United States Supreme Court has granted South Carolina leave to file its complaint in original jurisdiction and appointed a Special Master to develop a record on the question of the constitutionality of TEFRA's requirement that obligations be in registered form in order to qualify for tax-exempt status.)
It is, therefore, the official opinion of the Attorney Generalthat:
 1. a. The issuance of refunding bonds concurrent with the cancellation or retirement of outstanding obligations without approval of the electorate does not violate Article X, Section 26 of the Oklahoma Constitution.
 b. The issuance of refunding bonds and the placement of the proceeds thereof in escrow for the retirement of the outstanding obligations at a later date, otherwise known as "advanced refunding," does not violate Okla. Const. Article X, Section 26 subject to the following constraints:
 i) The total indebtedness authorized by the voters in the original bond issue must not be increased by the refunding. Stated otherwise, the total principal and interest payable over the life of the refunding bonds and the expenses incurred in issuing the refunding bonds shall be less than total principal and interest payable over the life of the refunded obligations. 62 O.S. 754(F) / 62 O.S. 755(A) (1984).
 ii) The outstanding bonds may not be liquidated over a period longer than that authorized for the original bond issue. Extension of the maturity date of the outstanding obligations in refunding must be approved by the voters. 62 O.S. 754(A) (1984).
 iii) The tax levy approved by the voters for the original bond issue may not be exceeded to accomplish the refunding and achieve the savings contemplated by the Act. 62 O.S. 755(A) (1984); Okla. Const. Article X, Section 26.
 iv) The proceeds of the refunding are placed in an escrow or trust account for the purpose of retiring the outstanding obligations. Any moneys placed in an escrow or trust account, pending use for their intended purpose, may be invested or reinvested only in federal securities. Such moneys and investments in the escrow or trust account, together with the interest or other gain to be derived from any such investments, shall at all times be at least sufficient to make all of the payments required to be made pursuant to the escrow agreement in the manner and at the times specified in the escrow agreement. The computations made in determining such sufficiency shall be verified by a certified public accountant. Said computations shall be certified within five (5) days prior to the delivery of and payment for the refunded bonds. 62 O.S. 757(D) (1984).
2. Section 62 O.S. 755 of the Act does not conflict with the Tax Equityand Fiscal Responsibility Act of 1982. However, any refunding obligationwhich may be classified as a "registration required obligation" must bein registered form for the interest on such obligations to be exempt fromfederal income tax. 26 U.S.C.A. 103(J).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
F. ANDREW FUGITT, ASSISTANT ATTORNEY GENERAL