15109

KALBER v. STOKES, MAYOR, *ET AL.*

(9 S. E. (2d), 785)

*Mr. Huger Sinkler,* for petitioner,

*Mr. John F. Wilmeth,* for respondents,

June 24, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

This is a proceeding in the original jurisdiction of the Court, by special permission, to test the right of the Town of Hartsville, S. C., to sell ninety-four thousand dollars of refunding bonds. The Town of Hartsville has adopted an ordinance, made in pursuance of the power granted specially by an Act of the General Assembly, providing for the issuing and sale of the said refunding bonds, to be dated July 1, 1940; to mature serially as set forth in the statement herein to which the parties to this action have agreed.

The town has outstanding, among others, four issues of these bonds; two of which are dated December 1, 1920, and mature December 1, 1960, both of which may be redeemed at the option of the town after December 1, 1940. These issues amount in the aggregate to forty-four thousand dollars. The town has two other issues dated November 1, 1921, maturing November 1, 1961, but which the town may, at its option call on November 1, 1941. These issues amount in the aggregate to fifty thousand dollars. These issues have been called. The town has entered into a contract of sale of these refunding bonds at a most attractive price. (two and one-half per cent). The petition seeks to enjoin this sale; alleging *inter alia* that the ordinance of the town authorizing the issuing and sale is unconstitutional, and the bonds issued under its provisions would be unconstitutional, illegal, null and void in that:

"(a) The bonds are to be issued without a petition from a majority of the freeholders of said town as shown by its tax books, and an election held in pursuance therewith, as required by the provisions of Section 13, Article II, and Section 7, Article VIII of the Constitution.

"(b) By issuing ninety-four thousand dollars of bonds on July 1, 1940, the bonded debt of the Town of Hartsville will exceed the constitutional limitations imposed upon it by Sec-

tion 7, Article VIII, and Section 5, Article X of the Constitution, as amended.

"(c) The action of town council in issuing bonds on July 1, 1940, to meet bonds called for payment on December 1, 1940, and November 1, 1941, is far in advance of the time at which such bonds should be issued and is no more than a mere speculation by the town officials in the money market and, consequently, is not a corporate purpose of the town * * * and is in violation of the provisions of Section 6, Article VIII of the Constitution."

The matter came on to be heard on the 14th day of June, instant. It is necessary for the matter to be determined in time for the bonds to be delivered on or before the first day of July, 1940, or the town will lose the benefit of its advantageous sale. The Court will, therefore, confine itself to what it conceives to be actually essential things.

Counsel for petitioner and respondents are agreed in the view that the answer to the question, "How far in advance of the maturity date of outstanding bonds may a municipal corporation issue refunding bonds," will determine all the issues involved in this proceeding.

And that is hardly an open question in so far as it appears to have been decided by the several State jurisdictions. It is certainly an open question insofar as the Federal Courts are concerned.

In this jurisdiction no Court has ever undertaken to fix a stated length of time in which a municipality may issue refunding bonds before the maturity of the bonds to be refunded.

In the case of *Robertson v. Tillman,* 39 S. C., 298, 17 S. E,. 678, the matter is not discussed nor expressly decided, but the almost necessary deduction from the opinion in that case is that the period, five months, between the issuing of the bonds for refunding $44,000.00, is reasonable because in the *Tillman case* in the opinion by that eminent jurist, Chief Justice McIver, approved a sale of refunding bonds six

months in advance of the maturity date of the bonds to be refunded.

Counsel for petitioner in this action, in his excellent brief, says, 'The petitioner has been able to locate only two instances where a Court of last resort in this country has been called upon to answer this question," to wit, how long in advance of the maturity date of outstanding bonds may bonds be issued for the redemption or refunding of such bonds? In the *Tillman case* the point was not made that the issuance of bonds dated January 1 to retire bonds due July 1 was too far in advance of the maturity of the bonds to be retired, but the fact that the refunding bonds were held to be valid justifies the inference that the Court would not have so held if it did not hold the bonds valid in all respects.

The two Florida cases referred to by petitioner's counsel are the cases of the *City of Miami v. State, Fla.,* 190 So., 774, and *Fleeman v. City of Jacksonville, Fla.,* 191 So., 840, 841.

The last-named case evidently clarified a statement made in the first-named case. The Court in the *Miami City case* had used language which was interpreted to mean that the issuing of the refunding bonds must be simultaneous with the maturity of the bonds to be refunded. The Court said in the case of *Fleeman v. City of Jacksonville, supra:* "In the very nature of the transaction, it would generally be impracticable to provide for cancellation of the outstanding bonds simultaneously with the issue of the refunding bonds. The outstanding bonds mature on fixed dates and the law contemplates that the proceeds of the refunding will be at the place of payment to take the place of principal and interest of the outstanding bonds when they mature. All this should be done as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time. In a business

transaction of this kind and running over the period required, it is hardly reasonable to expect that every element in chronology will synchronize."

That case made valid bonds apparently dated December 1, 1939, the proceeds from the sale of which were to retire and pay three separate issues due January 1, January 15, and February 1, 1940. Upon the filling of the opinion in the *Fleeman case*, the *City of Miami case* was brought again to the Supreme Court, which, in an opinion handed down March 19, 1940, *State v. City of Miami*, Fla., 194 So., 792, followed the holding in the *Fleeman case*.

The statement in the *Fleeman case*, to wit, "In a business transaction of this kind and running over the period required, it is hardly reasonable to expect that every element in chronology will synchronize," is a well stated expression from which we deduce the principle that no general rule can be stated that will fit every case. The rule of reason must prevail and it applies to the facts of every case. As for instance, in this very case now before us. The Town of Hartsville has two sets of bonds outstanding, one maturing December 1, 1940, and one maturing November 1, 1941. By reason of a fortunate condition of the bond market, it could contract for the sale of bonds for the refunding of these outstanding bonds at a most advantageous rate of interest, by which the town could save a large sum of money. The contract of sale calls for safe-keeping of the money until the date of maturity of each issue. The petitioner argues that there is a danger in the length of time between the issue and delivery of the new bonds and the retirement of the old bonds. Some danger attaches to any financial transaction and it is supposed to be provided for, and in this instance, in our judgment, is sufficiently provided for in the contract of sale now under review. Section 13 of that contract states:

"Section 13. The purchase price received from the sale of the consolidated refunding bonds, less accrued interest there-

on, if any there shall be, shall at once be deposited by the clerk and treasurer of the Town of Hartsville in the Bank of Hartsville, Hartsville, South Carolina, to the credit of the Town of Hartsville, in a special and irrevocable trust fund for the benefit of the owners and holders of the bonds of the four (4) outstanding issues herewith called and shall be applied solely, in the manner hereafter provided, for the payment of said bonds and for no other purpose.

"The said sum shall be deposited in such manner as to be withdrawable only upon the joint signatures of the Clerk and Treasurer of the Town and the cashier or some other officer of said bank, duly authorized by said bank to act in the premises. In the event there be a vacancy in the office of Clerk and Treasurer of the Town of Hartsville or should the then Clerk and Treasurer be incapacitated or refuse to act, then in that even said deposit shall be withdrawable upon the signature of the aforesaid officer of said bank, in accordance with the provisions hereof.

"On or before the 1st day of November, 1940, the sum of Forty-four Thousand ($44,000.00) Dollars shall be withdrawn and forthwith transmitted by certified check or other similar means to the principal office of the Central Hanover Bank and Trust Company, in the City and State of New York, to meet the payment of the principal sum then due * * *."

Moreover, the General Assembly of South Carolina passed an Act which was ratified the 8th day of May, 1940, the title to which is in these words: "An Act to Authorize the Town of Hartsville to Issue Refunding Bonds to Refund Certain Outstanding Bonds of Said Town Hereby Validated, and to Provide for a Tax to Pay the Principal of and Interest on Such Refunding Bonds."

In the Act there is a list of the bonds to be refunded. The Act further provides:

"Whereas, in view of the present prevailing money rates a propitious time exists for the refinancing of said indebted-

ness by the sale or exchange of refunding serial bonds, now, therefore,

"Section 1. Be it enacted by the General Assembly of the State of South Carolina: It is hereby found and determined, after due investigation, that the statements set forth in the recitals of this Act as a preamble hereto are in all respects true and correct.

\* \* \*

"Section 4. The Town Council of the Town of Hartsville hereby is authorized and empowered to issue bonds of said town of an aggregate principal amount not exceeding Ninety-four Thousand ($94,000.00) Dollars for the purpose of refunding the principal of any and all of the following issues of coupon bonds of said town, that is to say: Twenty-six Thousand ($26,000.00) Dollars in principal amount of Water Works Improvement Bonds, dated December 1, 1920, and maturing December 1, 1960, and bearing interest at the rate of six per centum (6%) per annum; Eighteen Thousand ($18,000.00) Dollars in principal amount of Sewerage Improvement Bonds, dated December 1, 1920, and maturing December 1, 1960, and bearing interest at the rate of six per centum (6%) per annum; Twenty-six Thousand ($26,000.00) Dollars in principal amount of Water Works Extension Bonds, dated November 1, 1921, and maturing November 1, 1961, and bearing interest at the rate of six per centum (6%) per annum; Twenty-four Thousand ($24,000.00) Dollars in principal amount of Sewerage Extension Bonds, dated November 1, 1921, and maturing November 1, 1961, and bearing interest at the rate of six per centum (6%) per annum, all of which are callable at the times set forth in the recitals of this Act: *Provided,* nevertheless, that the aggregate principal amount of bonds issued pursuant to the provisions of this Act shall not exceed the principal amount of the bonds of said series actually refunded or redeemed by said town.

\* \* \*

"Section 8. That for the payment of said bonds, both principal and interest, as the same respectively mature, there are hereby pledged, the full faith, credit and taxing power of the Town of Hartsville * * *.

"Section 9. Any bonds issued and pursuant to this Act may be sold by the said Town Council in such manner as said Town Council may deem advisable * * *.

"Section 10. In the event that any bonds issued pursuant to this Act shall be sold and the proceeds of the sale of such bonds cannot be immediately applied to the payment of the outstanding bonds, such proceeds shall be deposited in a special account in a bank which is a member of the Federal Reserve System, withdrawable only for the purpose of paying the outstanding bonds herein referred to, and the Town Council of the Town of Hartsville may require such deposit to be secured to its satisfaction."

With the imprimatur of the General Assembly thus impressed upon the contract of sale, we think there is no doubt of the validity of the refunding bonds.

In their briefs, counsel for petitioner and respondents have confined their arguments almost wholly to the question whether the refunding bonds are invalid because they are issued too far in advance of the dates of their maturity, but, in addition to this question, it is suggested in the petition that (a) the bonds are to be issued without petition from a majority of the freeholders of said town * * * and an election held in pursuance therewith, as required by Section 13, Article II and Section 7, Article VIII of the Constitution. (b) That the issuing of Ninety-four Thousand ($94,-000.00) Dollars of bonds on July 1, 1940, will exceed the limit of the bonded debt of the Town of Hartsville imposed by Section 7, Article VIII and Section 5, Article X of the Constitution as amended.

The very able, exhaustive and well considered opinion of the distinguished jurist, the late Chief Justice Stabler, in the case of *Williams v. City of Rock Hill,*

177 S. C., 82, 180 S. E., 799, 803, considers and disposes of issues identical to the above ones, and others involving the same constitutional questions as are involved here. The refunding bonds in that case were issued pursuant to an Act of the General Assembly similar in purport to that which authrorized the issuing of the bonds in this case. In the *Williams case* the learned jurist, who wrote the opinion, said: "In the case at bar, the Legislature, as indicated, did not see fit to prescribe the manner in which the bonds in question should be sold, as undoubtedly it could have done; but it vested the city council, as it had authority to do, with power and discretion to dispose of them as to the council might seem best. The wisdom of such action on the part of the General Assembly being a legislative question, will not be inquired into by the Court. See *Brown v. Tharpe,* 74 S. C., 207, 54 S. E., 363. The contention of the petitioner has no support in authority, and is without merit."

Our judgment in the present case is that the refunding bonds are valid. Therefore, the permanent injunction prayed for is denied and the petition is dismissed.

MESSRS. JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.