389 P.2d 207

**CITY OF ALBUQUERQUE, New Mexico, a Municipal corporation, Petitioner-Appellee,**

v.

**John GOTT, Director of the Department of Finance and Administration of the State of New Mexico, Respondent-Appellant.**

No. 7529.

Supreme Court of New Mexico.

Feb. 10, 1964.

Earl E. Hartley, Atty. Gen., Thomas A. Donnelly, Asst. Atty. Gen., Santa Fe, for appellant.

Standley, Kegel & Campos, Santa Fe, for appellee.

CARMODY, Justice.

The City of Albuquerque (appellee) sought mandamus to require the Director of the Department of Finance and Adminis-

tration to approve a refunding bond proposal. The trial court, after hearing, ordered that a peremptory writ of mandamus issue, and it is from this action that this appeal results.

The real issue is whether the proposed refunding bonds are in violation of §§ 13 and 12 of art. IX of the New Mexico Constitution, since it is claimed that the amount of outstanding indebtedness will thus be increased so as to be in excess of the constitutional debt limitation and will constitute an incurrence of debt without authorization by referendum. As a part of these contentions, it is also urged that the proposed plan is illegal because certain of the outstanding bonds to be refunded will not be called for redemption on the first date the same become callable.

The 1963 legislature enacted Chapters 234 and 235 of the Session Laws of 1963, which are compiled as §§ 11–6–23 to 11–6–28, inclusive, and 11–6–34.1, N.M.S.A., 1953 Pocket Supp. Chapter 234 provides for the issuance of refunding bonds upon the approval of the Department of Finance and Administration, and amended the existing law with respect to the issuance and use of refunding bonds. Chapter 235 relates to the application of refunding bond proceeds, specifies a new procedure whereby the bonds may be placed in escrow in any commercial bank, within the State of New Mexico, which has full trust powers and which is a member of the Federal Deposit Insurance Corporation, and that pending the use of the escrowed proceeds, the same may be invested only in direct obligations of the United States of America so as to insure prompt payment of the bonds to be refunded. This latter chapter has other provisions, only one of which need be mentioned, this being that the bonds to be refunded must, unless otherwise surrendered or paid earlier, either mature or be callable within ten years from the date of issuance of the refunding bonds.

The city has outstanding general obligation water and sewer bond issues totaling in excess of forty-five million dollars. These bonds were sold at varying interest rates so that, as of the present, the total interest charge to maturity amounts to nearly twelve million dollars. By ordinance duly enacted, the city proposed to sell refunding bonds and, with the proceeds, establish an escrow fund which would be invested in United States bonds. The United States bonds, together with the interest accumulating, would be utilized to pay the present existing bonds as they mature or are subject to redemption, although in some instances there might be a lapse of a relatively short period to enable the city to benefit by the maturing of the various United States bonds. The plan provides for a systematic payment of the principal and interest on the outstanding bonds out of the escrow account. The whole purpose of this procedure is to allow the city to take advantage of the present

more favorable bond market and the higher rate of interest obtained from United States bonds, it being claimed that there will be a resultant saving to the City of Albuquerque and its taxpayers of a sum in the neighborhood of three million dollars in interest payments.

Although the exact question raised here has not been before us on any previous occasion, in Southwest Securities Co. v. Board of Education of Village of Lovington, 1936, 40 N.M. 59, 54 P.2d 412, we determined that refunding bonds issued by a school district were not in violation of § 11 of art. IX of the Constitution of New Mexico. We there said:

" * * * If the bonds were issued to refund valid obligations * * *, it is immaterial that the bonded debt of the district exceeded 6 per cent. of the assessed value at the time the refunding bonds are issued."

Even though § 11 relates to restrictions on school district indebtedness and §§ 12 and 13 apply to municipal indebtedness and contain somewhat different provisions, nevertheless the basic question is the same and the above cited case is authority supporting the constitutionality of the refunding bonds here questioned. See also § 15 of art. IX, Constitution of New Mexico, and cf. Town of Alamogordo v. Beall, 1937, 41 N.M. 93, 64 P.2d 384.

Appellant takes the position that unless the old bonds are cancelled simultaneously with the issuance of the new bonds, that the debt of the municipality is necessarily increased. This position had its origin in Doon v. Cummins, 1892, 142 U.S. 366, 35 L. Ed. 1044, 12 S.Ct. 220. A few jurisdictions have followed and adopted the reasoning of the Doon case, but it is decidedly a minority view, even to the extent that United States Circuit Courts of Appeal have on numerous occasions distinguished the Doon case (see, for example, City of Huron v. Second Ward Sav. Bank (8th Cir. 1898), 86 F. 272, 49 L.R.A. 534), and it has been said by most courts that no new indebtedness is created, particularly where the proceeds of the refunding are applied to municipal indebtedness, annot. 97 A.L.R. 452–457.

In addition to Doon, we have carefully considered the decisions from other states as cited by appellant, particularly Birkholz v. Dinnie, 1897, 6 N.D. 511, 72 N.W. 931; Hale v. Fiscal Court of Fulton County, 1940, 283 Ky. 599, 142 S.W.2d 115; Epley v. Kentucky County Debt Commission, 1940, 283 Ky. 600, 142 S.W.2d 116; Holt v. City of Covington, 1941, 286 Ky. 727, 151 S.W.2d 780; and cases from Washington and Iowa which have perhaps been overruled or modified, see Dearling v. Funk, 1934, 177 Wash. 349, 32 P.2d 548; Eaton v. Thurston County, 1939, 1 Wash.2d 178, 95 P.2d 1024; Heins v. Lincoln, 1897, 102 Iowa 69, 71 N. W. 189; and Banta v. Clarke County, 1935,

219 Iowa 1195, 260 N.W. 329. Suffice it to say that we decline to follow the strict rule enunciated in Doon and as followed in North Dakota and Kentucky.

The majority rule, which we feel is more persuasive, and in accordance with the practicalities is supported by decisions from Florida (Fleeman v. City of Jacksonville, 1939, 140 Fla. 478, 191 So. 840; State v. City of Miami, 1944, 155 Fla. 6, 19 So.2d 410; State v. City of Orlando (Fla.1955), 82 So.2d 874; State v. City of Melbourne (Fla.1957), 93 So.2d 371); South Carolina (Kalber v. Stokes, 1940, 194 S.C. 339, 9 S.E.2d 785); Louisiana (State ex rel. Maestri v. Cave, 1939, 193 La. 419, 190 So. 631); Alabama (Taxpayers and Citizens v. Shelby County, 1944, 246 Ala. 192, 20 So.2d 36); South Dakota (National Life Ins. Co. v. Mead, 1900, 13 S.D. 37, 82 N.W. 78); Idaho (Veatch v. City of Moscow, 1910, 18 Idaho 313, 109 P. 722); Texas (City of McAllen v. Daniel, 1948, 147 Tex. 62, 211 S.W.2d 944); and Arizona (Citrus G. D. Assn. v. Water Users' Assn., 1928, 34 Ariz. 105, 268 P. 773; Allison v. City of Phoenix, 1934, 44 Ariz. 66, 33 P.2d 927, 93 A.L.R. 354). See also 1 Dillon, Municipal Corporations, 5th ed., § 202; and 15 McQuillin, Municipal Corporations, 3d ed., § 41.36.

 To our view, where there are funds in the irrevocable escrow account available to meet an indebtedness, the obligation cannot be termed an "outstanding" indebtedness, in the ordinary sense. See Southwest Securities Co. v. Board of Education of Village of Lovington, supra, and Board of Education, Etc. v. Woodmen of the World (10th Cir. 1935), 77 F.2d 31, a case involving a school district of Torrance County, New Mexico, wherein it was said that refunding does not increase the debt of the municipality. In our opinion, the plan here involved may be analogized to that of a sinking fund, and it is generally held that sinking funds are not debts within the meaning of constitutional debt-limit provisions. See 15 McQuillin, Municipal Corporations, 3d ed., § 41.40.

While it is true that, technically speaking, upon the issuance of the refunding bonds there will appear to be an indebtedness which exceeds the constitutional limitation, however, this is more a matter of form than of substance. We cannot presume that elected officials are dishonest, but will, to the contrary, assume that they will fulfill their legal duty. Any other result would, in effect, prohibit the issuance of refunding bonds, unless the original bonds are cancelled simultaneously. With modern methods of finance, this is an obvious impossibility, and even though the precise plan may not have been contemplated by the constitution makers, in our view it does no violence to the provisions of the constitution. Where the proceeds of the refunding bonds are placed in escrow or a trust fund, for the sole purpose of paying off the original in-

debtedness, the latter bonds cannot be considered as an increase in the indebtedness of the city. See Citrus G. D. Assn. v. Water Users' Assn., supra, and Board of Education, Etc. v. Woodmen of the World, supra.

As we understand the argument of the appellant, he apparently feels that the lapse of time between the issuance of the refunding bonds and the final payment of the original bonds, being some ten years, casts constitutional doubt upon the entire proceedings. Thus his contention seems to be that it might not be so serious if the original bonds were to be paid off in a relatively short period of, say, thirty days, but that the longer period is so fraught with danger as to bring the constitutional provisions into play. Such an argument does not impress us. The same contention was made in Florida, and the supreme court of that state has given its approval to the issuance of refunding bonds in causes where the original bonds were not to be redeemed for seven weeks. (Fleeman v. City of Jacksonville, supra), seven months (State v. City of Miami, supra), two or three years (State v. City of Orlando, supra), and five years (State v. City of Melbourne, supra). The legislature, by its enactment, obviously determined that a ten-year period was reasonable within which the original bonds must be retired. Under the plan here submitted, we do not believe that such a period is so unreasonable as to cast doubt upon the constitutionality of the act.

Neither are we impressed with the argument that certain of the original bonds will not be paid immediately upon their initial callable date. It is obvious from the plan as submitted under the ordinance and as argued before us, that the United States bonds will be retained in the escrow fund until their respective maturities, and that at that time those of the original bonds which have matured, or become callable within a reasonably short period preceding the maturing of the United States bonds, will be retired. To require that each one of the several hundred original bonds be paid upon the very date they might be callable is not in accordance with a practical view of present-day financing.

It is our opinion that the proposed issue constitutes refunding bonds within the contemplation of § 15 and does not violate either § 13 or § 12, art. IX, of the Constitution, and the judgment should be affirmed. It is so ordered.

COMPTON, C. J., and CHAVEZ, NOBLE and MOISE, JJ., concur.