Application of the BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, for the approval of Regents of the University of Oklahoma, University of Oklahoma Refunding and Housing and Dining System Bonds of 1966 in the principal sum of $27,-465,000 and for the approval of Regents of the University of Oklahoma Student Facilities Revenue Bonds of 1966, Series E, in the principal sum of $1,367,000.

No. 42053.

Supreme Court of Oklahoma.

June 28, 1966.

George J. Fagin, Andrew J. Haswell, Jr., Oklahoma City, David Swank, Norman, Okl., for applicant.

WILLIAMS, Justice.

The principal questions for our determination herein are, first, whether the Legislature may validly authorize the governing board of a college or university to issue "advance refunding bonds" (payable solely from revenues) and whether the bonds of the two series with which this case is concerned, when issued, will be valid in all respects. Our answers to these questions are in the affirmative.

The application herein was filed in behalf of the University of Oklahoma, hereinafter called University, by its Board of Regents, hereinafter referred to as Board, pursuant to its authority under Section 8, Article 13, Constitution of Oklahoma and under Sections 301–305, House Bill No. 810, Laws of the Thirtieth Legislature, (70 O.S.1965 Supp. Sections 3301–3305), hereinafter referred to as the Act.

Section 1011 of the Act, (70 O.S.1965 Supp. Sec. 4011) authorizes the Board to file an application with this Court seeking the approval of any series of bonds to be issued pursuant to the authority granted in such Act and confers exclusive jurisdiction upon this Court to hear and determine each such application and any protests that might be filed thereto. Such section also prescribes the notice of filing any such application which must be given and the manner of service thereof. Proof of publication of statutory notice has been filed herein and both the notice and service thereof are approved.

The applicant timely appeared and made its oral presentation in addition to having filed its brief herein. No one appeared to contest the issuance and approval of subject bonds.

As authorized in the Act, we have accepted jurisdiction of the application.

Before proceeding with a discussion of the merits of the application presently before us, we note three things concerning the Act pursuant to which the Board is proceeding.

First, without discussing Sections 4001–4013 (70 O.S.1965 Supp.) in detail, we simply announce that in our view the Act appears to fully authorize the action the Board has taken and the adoption by it of the respective two resolutions herein discussed.

Next we note that the provisions of section 4006 (of 70 O.S.1965 Supp.) which require the deposit of certain funds in the State Treasury appear definitely to relate to proceeds of the sale of bonds which are to be used for new construction and do not relate to those refunding bond proceeds which are to be deposited in escrow with the trustee bank and used for refunding bonds of earlier issues as herein contemplated and as provided by section 4002, subsection (d), and as may be authorized pursuant to Section 4004(a) (5).

Further, we invite attention to a discussion at a later stage of this opinion of the "advance refunding" provisions of the Act and the respective resolutions (Nos. 1 and 2).

From an observation of the caption of this case, one discerns that sought herein is our approval of two separate issues of bonds, one in the amount of $27,465,000 and the other in the amount of $1,367,000. The part of Board's application herein which seeks approval of the $27,465,000 issue is supported by transcript of proceedings of its resolution No. 1 of May 12, 1966.

That portion of its application seeking approval of the issue of $1,367,000 refunding bonds is supplemented by its resolution No. 2 of May 12, 1966. Further discussion of this latter issue of bonds is had later in this opinion.

The Board proposes to use the proceeds of the sale of the $27,465,000 issue of bonds herein involved for two purposes. A portion thereof ($14,046,000) is to be used for the purpose of constructing, equipping and furnishing two twelve story dormitory buildings housing approximately 1548 students each, and a central dining hall and cafeteria building to serve such students. The remaining part thereof ($13,419,000) will be used for the purpose of "advance refunding" all of the 1957, 1963 and 1964 housing and dining revenue bonds of the University of Oklahoma. The bonds to be so refunded are described in detail in resolution No. 1. The total amount of such bonds to be refunded as of July 1, 1966, will be exactly equal to the portion of the proceeds of the $27,465,000 issue allocated to "advance refund" them.

The Court has been advised that the University has already commenced work preliminary to construction of one or the other or both of the dormitory buildings, dining hall and cafeteria building, to be built with the amount of the proceeds of sale of the $27,465,000 bond issue herein contemplated not to be applied to refunding.

The Board has set aside tracts of land on the University campus for the building thereon of the two dormitories and the central dining hall and cafeteria. It is specified that the new buildings to be built with proceeds of this bond issue are to form a part of the dormitory and dining system of the University. The proposal is that the revenues to be received from the whole housing and dining system, that is including the new project, as well as those already accumulated and those to be received hereafter from other portions of such system, will be allocated to pay the interest and principal etc. on the new, larger inclusive issue with which we are here dealing (the $27,465,000 issue).

Resolution No. 1, to which we have referred, authorizes the issuance of Regents of the University of Oklahoma, University of Oklahoma Refunding and Housing and Dining System Revenue Bonds of 1966, dated July 1, 1966, in the amount of $27,465,-000, states the purposes thereof as above indicated, directs as to the numbering of the bonds, their denomination ($5000 each), and their maximum interest rate per annum (not exceeding five per cent (5%). Such resolution further provides that it shall be supplemented by 1966 supplemental resolution filling in details after the bonds shall have been sold. It fixes the maturity date of the respective bonds, provides for the manner and place of payment, for the registration of bonds as to principal only, or as to principal and interest by a registrar bank which will be one bank of payment; provides for another bank of payment in the City of New York; provides for the redemption of the bonds and the payment of premium in certain instances; specifies as to the giving of notice of redemption, provides for the pro rata call of bonds of the system, specifies how the bonds shall be executed, provides for the replacement of mutilated or lost bonds, for the registration of coupon bonds, sets forth the form of the bonds and provides for the pledge of revenues and bond security and lien, provides for disposal of system properties that have been used up or become obsolete, provides for the eventuality of the final accumulation of sufficient funds to discharge the obligation of all of the bonds of the issue, provides for disposition of the bond proceeds, both as to construction account

and escrow account, provides for flow of funds as set forth in Section 15 of the resolution, including the creation and establishment of certain funds as follows: a Housing and Dining System Revenue Fund Account, a Housing and Dining System Bond Principal and Interest Sinking Fund, a Housing and Dining System Reserve Fund, and a Housing and Dining System Repair and Replacement Reserve Fund.

Such resolution further provides for the investment of funds in the sinking fund, the reserve fund and the repair and replacement reserve fund by a trustee in direct obligations of the United States or in obligations guaranteed by the United States of America.

Sections 17 through 27 successively and respectively relate to the conclusion of the flow of funds; to additional parity bonds; to the payment of the bonds; to the use, occupancy and parietal rules covenant; to rentals and fees; to insurance; to operating reports; to enforcement of rights; to trustee of the sinking fund reserve account and repair and replacement reserve, etc.; to supplemental bond resolutions; and to the authority of the officers and agents of the Board. Section 28 is a so-called savings clause and Section 29 relates to effectiveness of the covenants in the resolution. The resolution (No. 1) is duly signed by President of the Board of Regents and the Secretary thereof.

Definition No. 13 contained in Section 1 of Resolution 1 defines the term "1959 Bonds", states that as of the date of the 1966 bonds (July 1, 1966) the outstanding amount thereof will be $1,367,000 and states that this amount will be refunded by separate issue. It is such separate issue to which resolution No. 2, with which we are herein concerned, relates. Definition No. 16 contained in Section 1 of Resolution No. 2 defines the term "1959 Bonds" exactly as they were defined in Resolution No. 1 as just hereinabove mentioned.

Likewise, definition No. 13 contained in Section 1 of Resolution No. 2 defines the term "1957 Bonds" exactly as they were defined in Resolution No. 1 without further detailing the description.

It is to be particularly noticed that Resolution No. 2 also defines some 1958 and some 1963 bonds. By definition No. 14 of Section 1 of Resolution No. 2 the term "1958 Bonds" is stated to mean the Regents of the University of Oklahoma, Student Facilities Bonds of 1958, Series B in the original aggregate principal amount of $1,060,000. By definition No. 19 of Section 1 of Resolution No. 2, the term of "1963 Bonds" is stated to mean "Regents of the University of Oklahoma Student Facilities Revenue Bonds of 1963, Series D", in the original aggregate principal amount of $1,800,000, dated January 1, 1963. The point to be made concerning such 1958 bonds and such 1963 Series D bonds (as distinguished from the 1963 Series A and Series B Bonds sought to be refunded with part of the proceeds of the $27,465,000 Bond issue treated in this opinion) is that such 1958 Series B Bonds in the original aggregate principal amount of $1,060,000 and such 1963 Series D Bonds in the original aggregate principal amount of $1,800,000, will remain outstanding and that the $1,367,000 Regents of University of Oklahoma, Student Facilities Revenue Bonds of 1966, Series E, dated July 1, 1966, with the issuance of which we are also concerned herein shall be on a parity with those 1958 Series B and 1963 Series D Bonds.

The entire $1,367,000 issue of 1966 Series E bonds will be used to refund the 1959 Series E bonds above described, by "advance refunding".

In Section 2 of its Resolution No. 2, the Board of Regents state that it has previously set aside certain described lands for the construction thereon of dormitories and facilities for the housing and feeding of students at the center for continuing education at the University, defined in Resolution 2 as "1959 Facilities". The Regents then describe a parcel of realty by metes and bounds and state that same has been set aside for the purpose of becoming a part of the "System". By Definition No. 33 of

Section 1 of Resolution 2, the term "System" is stated to mean a Student Facilities System consisting of all buildings and facilities for the acquisition, furnishing, equipment or improvement of which the 1958, 1959 and 1963 bonds and the bonds refunded thereby were issued, and all improvements, additions or extensions thereto; and that specifically but without limitation, the system includes the University stadium, the stadium facilities which were constructed with part of the proceeds of the 1958 bonds, the power and heating plant and the additions thereto, and the 1959 facilities, and all improvements, additions, or extensions thereto which may be made while any of the Series E Bonds authorized in Resolution No. 2 shall remain outstanding.

Section 3 of such Resolution No. 2 provides that for the purpose of paying the refunding costs to which Resolution No. 2 relates, there shall be borrowed on the credit of the net revenues to be derived from the operation of the system as above defined, the sum of $1,367,000, and that to evidence the sum so borrowed and in anticipation of the collection of revenues, there shall be issued negotiable bonds of the Regents of the University of Oklahoma in the total principal sum of $1,367,000.

Section 4 of such Resolution No. 2 provides for the terms and maturities of bonds of "Regents of the University of Oklahoma Student Facilities Revenue Bonds of 1966, Series E" numbered from 1 E to 274 E, both inclusive, and that each of such bonds shall be in the amount of $5000 except that No. 274 E shall be of the denomination of $2000. It is further provided that such bonds shall bear interest per annum until paid at rates not exceeding five per cent (5%) per annum bid by the purchaser at the public sale of the bonds, such rates of interest to be specified in the Series E Supplemental Resolution to be adopted by the Board after the sale of the bonds.

Section 5 of such resolution provides that certain bonds of such issue shall not be called for redemption prior to maturity, but that others may be so called and for the payment of premium, etc. Other provisions of Resolution No. 2 are similar to those of Resolution No. 1. They prescribe the form of the bonds of the issue, provide for security for payment of the bonds, for the flow of funds, for the use of "operating revenues", for the protection, retention and supplementation of both a previously set up "Student Facilities Revenue Bonds Principal and Interest Fund" and a previously created "Student Facilities Revenue Bonds of 1958 Reserve Fund", and provide for a reserve fund to "back-up" the payment of principal and interest on the system bonds payable from the bond fund as to which there would be a default if the money were not so used. There is also created and established a Student Housing and Dining Facilities Repair and Replacement Reserve Fund. It is provided that the trustee designated by the purchaser and specified in the Series E 1966 Supplemental Resolution shall retain in separate accounts secured by an approved amount of United States Government Bonds the Bond Fund, the Reserve Fund and the Repair and Replacement Reserve. Disposition of the bond proceeds is prescribed and there is created and established an escrow account sufficient to pay the amount of principal and interest and premium if any, on the bonds refunded. There are provisions for insurance, for operating reports, for fees of trustee and paying agent, as to authority of officers and as to additional parity bonds, for amendment of Resolution No. 2 and bond proceedings, for defeasance of the bonds upon the acquiring of sufficient funds with which to pay off the balance due thereon and a saving clause and a provision as to effectiveness of the resolution. The resolution is signed by the president and secretary of the Board.

 In brief in its second proposition, applicant contends that both its Refunding and Housing and Dining System Bonds of 1966 in the proposed amount of $27,465,000 and its Student Facilities Revenue Bonds of 1966 Series E, are valid in accordance with their terms. We are cited to the cases of Application of Board of Regents of

University of Oklahoma, 195 Okl. 641, 161 P.2d 447, and Application of Board of Regents of University of Oklahoma, 200 Okl. 442, 195. P.2d 936. The proceeds of the bond issue approved in the earlier of those two cases were to be used in constructing and equipping dormitories for use by students upon payment of rentals, fees and charges prescribed by said Board in an amount sufficient to pay the maintenance and operating costs of such buildings, the interest and principal on said bonds as they should mature and for the creation of a fund in the State Treasury to be pledged for the payment of said bonds and other appropriate provisions. The Court there held that the issue of bonds should be approved; that inasmuch as the funds were to be paid from revenues received from the use of the dormitories paid for with proceeds of the bond issue, that the indebtedness could not involve the taxing power of the State and that therefore the restriction found in Section 23 of Article 10, Constitution of Oklahoma, did not apply.

The bonds with the validity of which the Court was concerned in the later of such two cases, were self-liquidating bonds to be paid from revenues received from student fees. The proceeds of the sale of those bonds were to be used to construct an extensive power and heating plant on the campus of the University to furnish complete service coverage for the University with its numerous buildings and departments, for the benefit of the entire student body. Provision was made for the issuance and sale of bonds in the sum of $1,800,000 to cover cost of the plant and in detail for the collection of student fees for payment of the bonds and for funds for maintenance and operation of the plant or system. The Court there approved the issue of bonds, including determining that student fees may legally be pledged and collected for the purposes stated. The situations involved in those two cases and in the cases cited therein were not unlike the situation involved in each of the cases presented for the attention of the Court by

the present application, except that as has been hereinabove noted, a portion of the $27,465,000 issue here involved and all of the $1,367,000 issue here involved are to be used for "advance refunding purposes".

■ Our statute, sub-section (d) of Section 4002, (70 O.S.1965 Supp.) provides that the Board may issue bonds for the purpose of refunding any obligations of the Board to be payable from the revenues of any buildings and facilities constructed with bond proceeds, togther with revenues derived from any existing revenue-producing buildings, and facilities, or that it may authorize and deliver a single issue of bonds under the terms of such statute for the purpose in part of refunding obligations of the nature described and in part for the making of additional improvements or for the construction of additional buildings and facilities. Proceeds of the sale of the bonds issued for refunding purposes must be placed in escrow as hereinafter set forth.

With reference to the escrow provision, it is provided in such sub-section of the statute that in any case where refunding bonds are issued and sold (6) months or more before the earliest date on which all bonds to be refunded thereby mature or are called for redemption in accordance with their terms, the proceeds of the refunding bonds (other than incidental expenses) must be deposited together with any other funds available and appropriated by the Board for the purpose, in escrow with a suitable banking institution having trust powers within the State, whose deposits are insured by the Federal Deposit Insurance Corporation and that they shall be invested in securities maturing or callable at the option of the holder on such dates and bearing interest at such rates as shall be required to provide funds sufficient, with any cash retained in the escrow account, to pay when due the interest to accrue on each obligation refunded to its maturity, or if prepayable to an earlier designated date on which it may be called for redemption and to pay the principal amount of each such bonds at maturity, or, if prepayable, at its

designated earlier redemption date, and to pay any premium required for redemption on such date. It is further provided that before the refunding bonds are delivered, the Board must by resolution, irrevocably appropriate for these purposes the escrow account and all payments of principal and interest on the securities held therein, and must provide for the call of all bonds directed to be prepaid, in accordance with their terms, on the redemption date or dates designated. The statute provides what securities may be purchased from the escrow account and that such securities shall be purchased simultaneously with the delivery of the refunding bonds. It is further provided in such sub-section that no refunding bonds shall be issued more than ten (10) years before the last date on which the bonds to be refunded thereby mature or are directed to be prepaid in accordance with their terms. Such refunding bonds must be authorized, issued and secured in the same manner as other bonds issued pursuant to the Act. Provision may be made that any such refunding bonds shall have the same priority of lien on the revenues pledged for their payment as was enjoyed by the bonds refunded thereby.

Section 4004(a) (of 70 O.S.1965 Supp.) specifically provides that the bonds issued under the Act shall not be an indebtedness of the State or of the University, but shall be special obligations payable solely from revenue to be derived from the operation of the buildings and facilities contemplated in the bond issue and that the Board is authorized and directed to pledge all or any part of such revenues to the payment of principal and interest on the bonds.

That section further authorizes the Board to covenant as to the use and disposition of the proceeds of the sale of the bonds, and to make other covenants not here required to be described.

This Court has specifically approved the refunding of self-liquidating bonds of former issues under similar statutes. See case of Application of Oklahoma Planning and Resources Board, Okl., 274 P.2d 61.

We have not had occasion to rule upon the validity of "advance refunding" theory or bonds. However, applicant calls our attention to cases from several jurisdictions which approve the theory, especially as applied to municipal corporations, school districts, water corporations, etc.

Applicant in brief under its Proposition I of effect that advance refunding is valid, informs us that our statute was taken from the State of New Mexico, cites City of Albuquerque v. Gott, 73 N.M. 439, 389 P.2d 207. That case involved a proceeding by the city in mandamus to compel an official to approve a municipal refunding bond proposal. The Court of that State held that refunding bonds, whose proceeds were to be placed in escrow or a trust fund for purpose of paying off city's existing indebtedness, could not be considered as an increase of city's indebtedness within constitutional provision limiting indebtedness, even though some ten years would lapse between issuance of refunding bonds and final payment of original bonds, and further held, among other things, that the bonds constituted "refunding bonds". As stated in headnote No. 3 of the case, it was held that a ten year period for retirement of original bonds under refunding bond plan was not unreasonable, and therefore, did not cast doubt upon constitutionality finality of statutes involved.

The New Mexico case to which we have just referred appears to be very similar to our case as concerns the point involved. It was decided in 1964. The statute appears to be the same as ours as stated by applicant. Our statute was adopted in 1965. In Crossett v. Andrews, Okl., 277 P.2d 117, we said:

"In adopting a statute from another state, the Legislature is deemed to have adopted the existing judicial construction thereof by the courts of last resort of the state from which the same is taken."

See also Knox v. McMillan, Okl., 272 P.2d 1040.

We here note that applicant is of the opinion that it should be authorized to proceed with issuance of the two series of bonds.

here involved because an overall cheaper interest rate is expected to be obtained, the new issues will permit operation on a smaller ratio of income allocable to debt service requirements, new construction will be permitted on the basis of shorter experience as to earnings of buildings and facilities in operation, some $250,000 savings on interest paid will probably be made, certain facilities such as Kellogg Center for Continuing (Adult) Education will be made available to all University students (if the smaller issue here involved is approved), summer students may enjoy air-conditioned rooms instead of having to be sent to those not air-conditioned under existing bond agreements, certain student fees encumbered under previous bond issues will be released, etc.

These matters, while of interest, do not assist in our determination of the legal problem with which we are presented in this case.

In the case of Application of State of Oklahoma Building Bonds Commission, 202 Okl. 454, 214 P.2d 934, this Court in paragraphs 1 and 3 of the syllabus stated:

"In matters of general public interest, matters which directly affect the sovereign rights and powers of the state, the Legislature has power, under Art. 7, Sec. 2, Oklahoma Constitution, to confer original jurisdiction upon this court."

"The courts must sustain statutes, if possible, and nullify them only when they are clearly unconstitutional."

At page 937 of the Pacific report, the Court said:

"Whether or not it is wise to authorize such investment, is a question not within the scope of the authority of this court. The universal rule was well stated in the case of Ward v. Bailey, Governor et al., 198 Ark. 27, 127 S.W.2d 272, 278, 'The Legislature, unless prohibited by the Constitution, has a right to declare the fiscal policy * * *.'"

No question appears to have arisen herein as to whether any of the buildings or facilities already constructed and the revenue from which has been devoted to payment of bonds sought to be refunded in either of the proceedings with which we are herein concerned are in truth and fact not self-liquidating or sufficient to pay the maturities on the bonds with the proceeds of sale of which they were constructed.

We conclude that the Act with which we are here concerned (House Bill No. 810 of the Thirtieth Oklahoma Legislature, being 70 O.S.1965 Supp. §§ 4001–4013), violates no provision of the Constitution of Oklahoma and is valid and that the two issues of bonds approval of which is herein sought, are valid and that the proceedings in the adoption of Resolutions 1 and 2 to which we have referred are regular and that both issues of bonds to-wit: Regents of the University of Oklahoma, University of Oklahoma Refunding and Housing and Dining System Bonds of 1966 in the principal sum of $27,465,000 and Regents of the University of Oklahoma Student Facilities Revenue Bonds of 1966, Series E, in the principal sum of $1,367,000 will be valid when issued in accordance with the terms of the Act, the respective resolutions, and this opinion.

█ We specifically approve the principle of "advance refunding" of bonds previously issued as contemplated by the Legislature in the passing of House Bill No. 810 of the Thirtieth Oklahoma Legislature.

Time within which petition for rehearing may be filed herein is fixed at five (5) days from date of promulgation of this opinion.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.

IRWIN, Justice (concurring specially).

Although the majority opinion states that in Application of Oklahoma Planning and Resources Board, 274 P.2d 61, we specifically approved the refunding of self-liquidating bonds under similar statutes, the majority opinion does not discuss in detail the similarity between the original bonds in that proceeding which were refunded and

the original bonds in the instant proceeding which will be refunded.

In the Planning and Resources case, bonds were issued for the purpose of park improvements and for refunding previously issued bonds, and the combined revenue of all the state parks was devoted to the payment of the bonds so issued. The original bonds, which were refunded, were issued pursuant to Senate Bill No. 47, 1947 Session Laws, p. 605, and Section 16 of Chapter 12a, (Title 74 O.S.1961, Sec. 356.16), which expressly provided for the issuance of refunding bonds refunding any obligation of the Board. Said enactment, inter alia, provided:

"The Board may issue bonds hereunder for the purpose of refunding any obligations of the Board theretofore issued hereunder, or may authorize and deliver a single issue of bonds hereunder in part for the purpose of refunding such obligations and in part for the acquisition of additional properties or improvements. * * *."

The above statutory provision was in force and effect when the refunding bonds were issued and when we promulgated the Planning and Resources case.

When the bonds in the instant proceeding, which will be refunded, were originally issued, the statutory provision then in force and effect was Section 2072 of Title 70 O.S. 1951 and 1961, which provided:

"The board may issue bonds hereunder for the purpose of refunding any obligations of the board payable from the revenues of any building, as 'building' is hereinabove defined, together with revenues derived from any existing revenue-producing building or facility or facilities, or may authorize and deliver a single issue of bonds hereunder for the purpose in part of refunding obligations of the board payable from the revenues derived from any building or buildings and in part for the making of additions, improvements and extensions to such building or buildings, or the construction or acquisition of additional buildings, and the furnishing and equipping of such buildings or additions, together with revenues derived from any existing revenue-producing building or facility or facilities. * * *."

The exact language above referred to is employed in 70 O.S.1965 Supp. Sec. 4002(d), under which the present bonds will be refunded.

It necessarily follows that when the bonds in the Planning and Resources case were refunded, such bonds were refunded in the same manner as authorized when the bonds were originally issued; and when the bonds in the instant proceeding are refunded, they will be refunded in the same manner as authorized when the bonds were originally issued.

Therefore, in my opinion, the Planning and Resources case, 274 P.2d 61, is controlling in the instant proceeding although the bonds in that case were termed "refunding" bonds and in the instant action "advance refunding" bonds. I therefore concur specially to the opinion promulgated by a majority of my associates.