PUBLIC FINANCE
The Constitution and Statutes of the State of Oklahoma authorize the State Building Bonds Commission to refund outstanding Institutional Building Bonds by the method of procedure contemplated by the Commission. The State of Oklahoma is not obligated to distribute the monetary savings resulting from said refunding on the basis of any particular formula. The monetary savings will inure to the General Revenue Fund in the form of cigarette tax revenues to be appropriated in a manner designated by the Legislature. The Attorney General is in receipt of your request wherein you ask several questions regarding possible refunding of specific general obligation bonds previously issued by the State of Oklahoma through the State Building Bonds Commission. You state that the refunding procedure contemplated by the State Building Bonds Commission would be to utilize the refunding bond proceeds to purchase United States Government Securities to be placed in an escrow fund with the securities maturing in such amounts and at such times so as to provide funds sufficient to meet all principal and interest payments on the outstanding general obligation bonds as they mature or are called for redemption by the Commission. The creation and funding of the escrow fund would decrease or discharge the outstanding bonds as of the date of delivery of the refunding bonds. The refunding bonds would be retired from the cigarette tax monies previously pledged to the outstanding general obligation bonds. The Commission would only accept a bid on the refunding bonds that is lower than the average interest rate on the outstanding general obligation bonds. The acceptance of such a bid would require less cigarette tax monies to be used to retire the State's bonded indebtedness than was previously needed and would constitute monetary savings to the State of Oklahoma. Based upon this contemplated refunding procedure you asked, in effect, the following questions: 1. Do the Constitution and Statutes of the State of Oklahoma authorize the aforementioned refunding bond procedures? 2. If so, is the State required to disburse the contemplated monetary savings from said refunding on the basis of any particular formula or may they be appropriated in a manner designated by the Legislature? You state in your request that the State Building Bonds Commission is particularly interested in refunding the State Institutional Building Bonds of 1968, Series A, B and E, which have been issued pursuant to Article X, Section 38 of the Oklahoma Constitution and corresponding vitalizing legislation. Section 38 provides for the retirement of said indebtedness from cigarette tax revenues not already committed to other obligations of the State. In authorizing the State of Oklahoma Building Bonds Commission to issue Series A, B and E, the Legislature provided in 62 O.S. 57.124 [62-57.124] (1971) that five cents of the tax on each package of cigarettes levied and collected by the State of Oklahoma, or so much as may be necessary, shall be devoted to the payment of the interest on, and the principal of, the issued bonds. Title 62 O.S. 57.193 [62-57.193] (1976) provides: "The State of Oklahoma Building Bonds Commission may issue bonds pursuant to the provisions of this section for the purpose of refunding any outstanding obligations issued by the Commission. The bonds may either be sold or delivered in exchange for outstanding obligations. If sold, the proceeds may be either applied to the payment of the obligations being refunded or deposited in escrow for the retirement of the obligations. No outstanding obligations may be refunded which are not maturing, callable for redemption under their terms or voluntarily surrendered by their holders for cancellation, unless the Commission covenants that sufficient funds to meet all remaining interest and principal payments of the outstanding obligations when due will be placed in escrow for such payments in the State Treasury at the time of delivery of and payment for the new bonds issued under this section. All bonds authorized to be issued under this section shall be secured in the same manner as provided for the bonds being refunded. The Commission may provide that the refunding bonds have the same priority of payment and be paid from the same revenues as enjoyed by the obligations being refunded thereby. The Commission may enter into contracts and engage in such other acts as the Commission deems necessary to effect the offer and sale of its refunding bonds." It is apparent from 62 O.S. 57.193 [62-57.193] that the State Building Bonds Commission is authorized to refund outstanding issued general obligation bonds. The question of whether or not such provisions violate any constitutional debt limitation must be examined. The Oklahoma Supreme Court in Eaton v. St. Louis — San Francisco Railway Company, 122 Okl. 143, 251 P. 1032, had before it the question of whether the refunding of municipal indebtedness violated the constitutional debt limitation. In answering the question in the negative the Court stated: ". . . If a valid debt should be incurred by a municipality, either by contract or by warrants issued, or by a judgment rendered, then if such judgment warrant, or contractual obligation be within the constitutional limit at the time, it may be refunded without increasing the existing valid indebtedness, as it merely changes the form of such indebtedness, the new form taking the place of the old, which must be surrendered and canceled." In addition, see Kansas City Southern Railway Company v. City of Heavner, 175 Okl. Cr. 517, 175 P. 517; In re Menefee,220 Okl. 363, 97 P. 1014; State ex rel Board of Education v. West, 29 Okl. 503, 118 P. 146; Anadarko v. Kerr,142 Okl. 86, 285 P. 975; Protest of Chicago, R. I. P. R. Co., 143 Okl. 170, 287 P. 1023; Faught v. Sapulpa,145 Okl. 164, 292 P. 15; Alexander v. Board of Education,161 Okl. 287, 18 P.2d 863. While these refunding cases deal primarily with the constitutionality of refunding prior debt by replacing it with a new form of indebtedness, the considerations in view of constitutional debt limitations are similar. Under the facts you present the Commission is not going to replace old debt with a new form of indebtedness by immediately paying off the old debt with the proceeds of the refunding bonds, but is going to decrease the old debt by placing the refunding bond proceeds in escrow. Such escrow fund will be dedicated to the payment of the outstanding Series A, B and E bonds. This concept was considered by the Oklahoma Supreme Court in Application of Board of Regents of the University of Oklahoma, 427 P.2d 429. While this case is concerned with the question of refunding revenue bonds previously issued by the Oklahoma University Board of Regents, the refunding procedure was similar to that contemplated by the State Building Bonds Commission. Categorized by the Court as "advance refunding bonds", the bonds sought to be validated in this case presented the Court with a funding concept it had not ruled on before. In approving the concept the court stated: "Applicant in brief under its Proposition I of effect that advance refunding is valid, informs us that our statute was taken from the State of New Mexico, cites City of Albuquerque v. Gott, 73 N.M. 439,389 P.2d 207. That case involved a proceeding by the city in mandamus to compel an official to approve a municipal refunding bond proposal. The Court of that State held that refunding bonds, whose proceeds were to be placed in escrow or a trust fund for purpose of paying off city's existing indebtedness, could not be considered as an increase of city's indebtedness within constitutional provision limiting indebtedness even though some ten years would lapse between issuance of refunding bonds and final payment of original bonds, and further held, among other things, that the bonds constituted 'refunding bonds'. As stated in headnote No. 3 of the case, it was held that a ten year period of retirement of original bonds under refunding bond plan was not unreasonable, and therefore, did not cast doubt upon constitutionality finality of status involved." The Court further stated that they specifically approved the principal of "advance refunding". It is apparent from the cited cases and statutory authorization that the refunding bond procedures contemplated by the State Building Bonds Commission are legally authorized. In regard to your second question it must be determined how monetary savings will be realized by refunding the outstanding general obligation bonds. In issuing the refunding bonds at an average interest cost lower than currently exists on the A, B and E series a monetary savings will inure to the State. That savings will not manifest itself out of refunding bond proceeds, but will occur as a result of less cigarette tax being required to retire bonded indebtedness. Title 68 O.S. 302-1 [68-302-1] (1971), adopted in 1968, is part of the legislation vitalizing Article X, Section 38 of the Constitution and provides, in part, for the levying and collection of additional cigarette taxes to retire the bonded indebtedness authorized under Article X, Section 38. 68 O.S. 302-1 [68-302-1](c) provides: "The revenues resulting through June 30, 1968, from the additional tax herein levied shall be apportioned by the Oklahoma Tax Commission and transmitted to the State Treasurer, who shall deposit the same in the State Treasury in a fund to be known as the 'State of Oklahoma Building Bonds of 1968 Reserve Fund', which fund is hereby created. The Legislature shall appropriate from such fund or so much thereof as may be deemed necessary; first, for the payment of interest and principal upon any bonds issued for capital improvements pursuant to the constitutional amendment referred to the people by Senate Joint Resolution No. 52 of the Second Session of the Thirty-first Oklahoma Legislature; second, for other capital improvements at state institutions; third, for operating expenses of such capital improvements; and fourth, for any other purposes of state government; provided, further, that from and after July 1, 1968, all revenues resulting from the additional tax herein levied shall be apportioned by the Oklahoma Tax Commission and transmitted to the State Treasurer, who shall deposit the same in the General Revenue Fund." Title 62 O.S. 57.124 [62-57.124] (1971), adopted in 1969, provides: "It is hereby expressly provided and pledged for the benefit of the purchasers, owners and holders of said bonds that five cents ($.05) of the tax on each package of cigarettes levied by Section 1, Chapter 47, 1968 Oklahoma Session Laws, constituting the remainder of revenue available for the revenues lawfully levied and collected by the State of Oklahoma on the sale of cigarettes not already committed to other obligations of the State of Oklahoma, or so much as may be necessary, shall be devoted irrevocably to the payment and discharge of the interest on, and the principal of, the bonds issued hereunder as the same become due, and said revenues shall be, and hereby are, irrevocably pledged for such purposes." While 68 O.S. 302-1 [68-302-1](c) contemplates that all revenue from and after July 1, 1968, resulting from the additional cigarette tax levied pursuant to Section 302-1 would be placed in the General Revenue Fund, 62 O.S. 57.124 [62-57.124], adopted one year later, pledges five cents "or so much as may be necessary", of the tax to the payment of the interest on, and the principal of, bonded indebtedness issued pursuant to Article X, Section 38 of the Constitution. It is apparent that the portion of the five cents tax that is currently needed to help retire outstanding bonded indebtedness, but which would not be needed to retire the refunding bonds because of their lower interest cost, would, pursuant to 68 O.S. 302-1 [68-302-1](c), be placed in the General Revenue Fund. Article X, Section 38 of the Constitution governs as to the purposes for which the original bond proceeds must be expended, but would not apply to the monetary savings resulting from refunding those bonds. The monetary savings does not result from a savings in bond proceeds, but from cigarette tax money deposited in the General Revenue Fund. As with all monies in the General Revenue Fund cigarette tax money deposited therein would be subject to appropriation in a manner designated by the Legislature. Your questions are therefore answered as follows: The Constitution and Statutes of the State of Oklahoma authorize the State Building Bonds Commission to refund outstanding Institutional Building Bonds by the method of procedure contemplated by the Commission. The State of Oklahoma is not obligated to distribute the monetary savings resulting from said refunding on the basis of any particular formula. The monetary savings will inure to the General Revenue Fund in the form of cigarette tax revenues to be appropriated in a manner designated by the Legislature. (MIKE D. MARTIN)